Leslie Thomas **LEONARD,**
**Plaintiff–Appellant,**

v.

**Peter J. LACY, Superintendent, Bare Hill Facility, and Myaddow, Correctional Officer, Defendants–Appellees.**

**Docket No. 96–2393.**

United States Court of Appeals,
Second Circuit.

Submitted July 3, 1996.

Decided July 10, 1996.

Leslie Thomas Leonard, pro se, Malone, N.Y.

Before: NEWMAN, Chief Judge, KEARSE and WINTER, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This motion by a state prisoner for leave to appeal *in forma pauperis* obliges this Court to consider the application of the fee requirements of the Prison Litigation Reform Act of 1995 ("PLRA"). We conclude that an appellate court must take steps to assure compliance with the fee requirements of the PLRA before making any assessment of whether an appeal should be dismissed as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). We also conclude that a procedure must be established to assure the prompt and efficient compliance with the PLRA. We outline in this opinion the procedure this Court will use when prisoners seek to appeal from a judgment in a civil action without prepayment of fees. Since Leonard has not had an opportunity to submit the authorization we now require, we will dismiss the appeal in 30 days

unless within that time he files such authorization.

### Facts

Leslie Thomas Leonard, a prisoner incarcerated in a New York corrections facility, filed a complaint under 42 U.S.C. § 1983 against the superintendent of the facility and a corrections officer. He alleged verbal harassment, which he claimed violated his First Amendment rights. Leonard accompanied his complaint with a motion to proceed *in forma pauperis* ("i.f.p.") pursuant to 28 U.S.C. § 1915(a). The District Court for the Northern District of New York (Thomas J. McAvoy, Chief Judge) denied the motion for i.f.p. status and dismissed the complaint as frivolous. From the judgment entered April 29, 1996, Leonard filed a notice of appeal on May 2, 1996. Leonard thereafter filed in this Court the pending motion to proceed *in forma pauperis.*

### Discussion

Prior to the enactment of the PLRA, this Court responded to applications for leave to appeal *in forma pauperis* under subsection 1915(a) by making a threshold assessment of the merits of the appeal in order to determine whether the appeal surmounted the standard of frivolousness set forth in former subsection 1915(d) (renumbered subsection 1915(e) by the PLRA). Upon a determination that an appeal was frivolous within the meaning of former subsection 1915(d), *see Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), we dismissed the appeal. Generally, we denied the motion for i.f.p. status when we dismissed the appeal. On occasion, we first granted the motion for i.f.p. status upon determining that the appellant's lack of financial resources qualified him for i.f.p. status, then made the threshold assessment of the merits, and, upon concluding that the appeal was frivolous, dismissed it. *See, e.g., Hidalgo–Disla v. INS,* 52 F.3d 444 (2d Cir.1995).

On April 26, 1996, the President signed the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. 104–134, 110 Stat. 1321 (1996), Title VIII of which is the

Prison Litigation Reform Act of 1995. Section 804 of the PLRA makes a series of amendments to 28 U.S.C. § 1915, the provision of the Judicial Code governing *in forma pauperis* status. Since the new language affects not only Leonard's pending motion but also numerous other motions now pending in this Court or likely to be filed, we set forth in full those provisions of section 1915 that the PLRA amends, lining out those words deleted from the prior version and italicizing new matter:

### § 1915. Proceedings in forma pauperis

(a) Any *(a)(1) Subject to subsection (b), any* court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit *submits an affidavit that includes a statement of all assets such prisoner [sic] possesses* [and] that he *the person* is unable to pay such costs *such fees* or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he *the person* is entitled to redress.

*(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6–month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.*

An appeal *(3) An appeal* may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

*(b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—*

*(A) the average monthly deposits to the prisoner's account; or*

*(B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.*

*(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.*

*(3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment.*

*(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.*

*(c)* Upon the filing of an affidavit in accordance with subsection (a) of this section *subsections (a) and (b) and the prepayment of any partial filing fee as may be required under subsection (b)* .... [balance of former subsection (b) is unchanged].

*(d)* .... [balance of former subsection (c) is unchanged].

(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

*(e)(1) The court may request an attorney to represent any person unable to afford counsel.*

*(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—*

(A) the allegation of poverty is untrue; or

(B) the action or appeal—

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

Before the PLRA, section 1915 required all litigants seeking to proceed in a trial court or on appeal without prepayment of fees to file an affidavit of poverty. The PLRA amends section 1915 by imposing additional requirements on prisoners seeking to avoid prepayment of fees in civil actions and in appeals in civil actions. The prisoner must pay the full amount of filing fees by subjecting the prisoner's "trust fund account ... (or institutional equivalent)," 28 U.S.C. § 1915(a)(2) (hereinafter "prison account"), to periodic partial payments. The initial payment is 20 percent of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, id. § 1915(b)(1), unless the prisoner has no assets, id. § 1915(b)(4). Subsequent payments are 20 percent of the preceding month's income,[1] in any month in which the account exceeds $10, until the filing fees are paid. Id. § 1915(b)(2).

The PLRA's amendments to section 1915 raise several issues that apply to Leonard's pending motion. Preliminarily, we note that there is no issue as to the applicability of the PLRA to his motion since both his notice of appeal and his motion to proceed in forma pauperis were filed after the April 26, 1996, effective date of the Act.

## I. At What Point Does the Prisoner Become Liable for Filing Fees?

A basic issue arising under the PLRA is whether a prisoner filing an appeal becomes liable for appellate filing fees before or after his motion for leave to appeal in forma pauperis has been adjudicated. The language of subsection 1915(b)(1) could be read to mean that fee liability attaches only after i.f.p. status has been granted. The requirement of payment of the full amount of a filing fee is imposed "if a prisoner brings a civil action or files an appeal in forma pauperis." 28 U.S.C. § 1915(b)(1) (emphasis added). This wording is slightly different from subsection 1915(a)(2), which imposes the requirement of filing an affidavit of poverty and a certified copy of the trust fund account for the prior six months upon "[a] prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor." Id. § 1915(a)(2). Subsection 1915(a)(2) plainly applies to a prisoner approaching a court and "seeking" to proceed i.f.p. Arguably, subsection 1915(b)(1) applies only to a prisoner who already has i.f.p. status, i.e., a prisoner who has been granted such status in the district court with respect to his complaint and has been continued in such status for purposes of his appeal,[2] or who has been granted such status by this Court.

In courts like ours, however, in which the decision to grant a motion to appeal i.f.p. is usually made only after determining that the appeal surmounts the standard of "frivolousness," such a construction would produce a bizarre result: the prisoner whose complaint or appeal is determined to be frivolous would be spared the obligation to pay a filing fee, while only the prisoners who surmount the "frivolousness" standard would become obligated for filing fees. The text does not require such a construction. The phrase "brings a civil action or files an appeal in forma pauperis" can be read to include both prisoners who have been granted i.f.p. status and those who seek such status.

---

1. Subsection 1915(b)(2) uses the word "income" as the base on which the subsequent 20 percent payments are to be calculated, although subsection 1915(b)(1)(A) uses the word "deposits" as the base on which the initial 20 percent payment is to be calculated (if greater than the average monthly balance). We need not decide at this point whether different meanings were intended.

2. If a litigant is granted i.f.p. status in a district court, and if that status is not revoked in the district court, the litigant, upon filing a notice of appeal, continues on appeal in i.f.p. status. Fed. R.App.P. 24(a).

Moreover, there is abundant legislative history to indicate that Congress was endeavoring to reduce frivolous prisoner litigation by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees. *See* 141 Cong.Rec. S7526 (daily ed. May 25, 1995) (statement of Senator Kyl) ("The subsection provides that whenever a Federal, State, or local prisoner seeks to commence an action or proceeding in Federal court as a poor person, the prisoner must pay a partial filing fee...."); *PLRA: Hearing on S. 3 and S. 866 Before the Senate Committee on the Judiciary,* 104th Cong., 1995 WL 496909 (F.D.C.H.) (July 27, 1995) (prepared statement of O. Lane McCotter, Exec. Dir., Utah Dep't of Corrections) ("The driving force behind this flood of litigations is that inmates have 'nothing to lose' in filing even the most frivolous case...."); 141 Cong.Rec. S14417 (daily ed. Sept. 27, 1995) (section summary) ("This section ... [r]equires an inmate seeking to file in forma pauperis to submit to the court a certified copy of the inmate's prison trust fund account ... [and] to pay, in installments, the full amount of filing fees, unless the prisoner has absolutely no assets.").

Furthermore, construing the statute to impose the fee requirement only on those granted i.f.p. status would place on courts precisely the burden that the statute was intended to avoid: they would have to expend judicial and staff time to make the determination of whether every complaint or appeal surmounts the "frivolousness" threshold. By requiring the prisoner to file a certified copy of his trust account statement and to become obligated to pay the filing fee before frivolousness is assessed, many prisoners can be expected to make their own assessment of frivolousness and will elect not to file a considerable number of complaints and appeals.

Nor is there any unfairness in imposing the fee obligation, subject to installment payments, upon all prisoners. Every fee-paying litigant who files a lawsuit or takes an appeal accepts the risk that the complaint or appeal may be determined to be frivolous, in which event the complaint or appeal will be dismissed and the filing fee will be lost. *See* *Pillay v. INS,* 45 F.3d 14, 17 (2d Cir.1995). There is nothing unfair about obliging prisoners to accept that same risk, and there is every reason to believe Congress expected precisely that result.

One provision of the PLRA arguably suggests that at least in some instances a court that has received a prisoner's civil complaint should make a threshold assessment of its merits and dismiss upon a determination of frivolousness, prior to the prisoner's exposure to liability for filing fees. Section 1915A of Title 28, added by section 805 of the PLRA, provides that a court shall review "before docketing if feasible, or, in any event, as soon as practicable after docketing" a complaint by a prisoner against a governmental entity or its employee, and, on such review, shall dismiss the complaint if, among other things, it is frivolous. Depending on what Congress understood the "docketing" step to involve, this provision could mean that judicial assessment of the complaint is to precede any steps concerning filing fees.

Apparently docketing practices are not uniform among district courts. A docket is a court's official record of what occurs in a case. It may be maintained either on paper or electronically. In some courts, as soon as a complaint is received, a "docket" is opened, meaning that a paper or electronic record is begun on which all subsequent actions occurring in the case will be recorded. The filing of the complaint is usually the first entry on the docket. In other courts, however, *pro se* complaints are given a preliminary screening prior to the opening of a docket, and if a judge determines that the complaint is frivolous, a docket is later opened in which is simultaneously recorded the filing of the complaint, the plaintiff's motion to proceed *in forma pauperis,* and the judge's order of dismissal. As to such dismissed complaints, the i.f.p. motion is granted in some courts, and denied in other courts. Only in courts that delay docketing until frivolousness has been determined could the screening contemplated by section 1915A occur before docketing. And even in such courts, Congress likely did not intend the section 1915A screening to insulate prisoners from liability for filing

fees for complaints determined to be frivolous.

In any event, section 1915A requires screening before docketing "if feasible," and appears not to interfere with the practice of many courts to open a docket as soon as a complaint is received and thereafter make a determination as to frivolousness. Furthermore, the screening procedure appears to be designed for district courts, since it refers to review of a complaint, rather than an appeal. We do not regard section 1915A as detracting from the evident Congressional purpose of obliging all prisoners who file complaints or appeals to become liable for filing fees, except those who have no assets and no means to pay the initial partial filing fee.

 For all of the reasons stated, we will apply the PLRA to impose any required obligation for filing fees (subject to installment payments) upon all prisoners who seek to appeal civil judgments without prepayment of fees. That obligation will be imposed prior to any assessment of the frivolousness of the appeal.

## II. What Appellate Fees Are Subject to the PLRA?

The filing of an appeal requires the payment of two different fees, a $5 fee, usually referred to as a "filing fee," and a $100 fee, usually referred to as a "docketing fee." The $5 fee is required by 28 U.S.C. § 1917 "[u]pon the filing of any separate or joint notice of appeal," although that provision does not label the fee as a "filing fee." The $100 "docketing fee" is required by resolution of the Judicial Conference of the United States, *see Report of the Proceedings of the Judicial Conference of the United States* 12 (March 17, 1987) (hereinafter "Judicial Conference Report"), acting pursuant to its authority to determine "[t]he fees and costs to be charged and collected in each court of appeals." 28 U.S.C. § 1913.

 Though it is arguable that, with respect to appeals, the PLRA payment obligations apply only to the $5 fee, we believe that the Act must be applied to both the $5 fee and the $100 docketing fee. First, the PLRA creates an obligation to pay "any court *fees* required by law," 28 U.S.C.

§ 1915(b)(1) (emphasis added), and further provides that "[i]n no event shall the filing fee collected exceed the amount of *fees* permitted by statute for the *commencement* of a civil action or an appeal . . .," *id.* § 1915(b)(3) (emphasis added). Both the $5 and the $100 fees are required for the "commencement" of an appeal. Second, the $100 fee is entirely independent of any particular fees that might be assessed in the course of an appeal, such as fees for the copying of court documents. Finally, it is not likely that Congress would have applied the PLRA to appeals in the expectation of creating some deterrent effect against frivolous appeals if the Act applied only to the $5 fee. Nor would Congress likely have imposed administrative burdens on appellate courts and prisons only for such a nominal amount. We will apply the PLRA payment obligations to both the $5 fee and the $100 fee.

## III. What Procedure Shall Be Used to Accomplish the Imposition of an Obligation for Appellate Filing Fees?

The PLRA purports to implement the fee obligations by imposing three distinct requirements. The prisoner must submit a certified copy of the prisoner's trust fund account statement for the prior six months. 28 U.S.C. § 1915(a)(2). The court "shall assess and, when funds exist, collect," the initial partial filing fee. *Id.* § 1915(b)(1). Each month thereafter, the agency having custody of the prisoner "shall forward payments from the prisoner's account to the clerk of the court" in the amount of 20 percent of the preceding month's income credited to the prisoner's account "each time the amount in the account exceeds $10 until the filing fees are paid." *Id.* § 1915(b)(2).

 Though subsection 1915(a)(2) imposes on the prisoner the requirement to submit a certified copy of his trust fund account statement and subsection 1915(b)(1) imposes on the court the requirement to collect the initial filing fee payment, we believe that a court is entitled to satisfy these requirements by obliging the prisoner to submit an *authorization* for both tasks to be performed by the prison. Our Clerk's Office can then send a copy of the prisoner's authorization to the

prison, thereby precipitating receipt of the certified copy of the trust fund account statement and the initial partial filing fee payment, as well as the subsequent payments that subsection 1915(b)(2) requires the prison to remit from the prisoner's account. The authorization procedure satisfies the statutory requirements that the prisoner cause the certified statement to be furnished and that the court cause the initial partial payment to be collected. This procedure can be expected to minimize disputes between the prisoner and Clerk's Office personnel. The prisoner will remain responsible for furnishing to this Court the affidavit of poverty, required by subsection 1915(a)(1).

We will therefore implement the payment obligations of the PLRA by taking the following steps:

1. This Court will require every prisoner seeking to appeal a judgment in a civil action without prepayment of fees to file with this Court, in addition to an affidavit of poverty, required by subsection 1915(a)(1), a signed statement authorizing the agency holding the prisoner in custody (a) to furnish to this Court a certified copy of the prisoner's prison account statement for the preceding six months, as required by subsection 1915(a)(2), and (b) to calculate and disburse funds from the prison account, as required by subsection 1915(b), including the initial partial filing fee

payment and the subsequent monthly payments.[3]

2. Upon the receipt of the prisoner's authorization, the appeal will be processed in the normal course, including consideration of whether the appeal should be dismissed as frivolous.

3. The agency with custody of the prisoner shall have the obligation to send to this Court the certified copy of the prisoner's trust fund account statement for the prior six months, and to send to this Court or the District Court[4] the initial partial filing fee payment, and the subsequent monthly payments until the entire $105 has been paid. Once the prisoner has authorized sending the certified copy of his prison account statement and making the disbursements from his prison account, the failure of the agency to send the statement or to remit any required payment shall not adversely affect the prisoner's appeal.

4. If a prisoner files an appeal without prepayment of appellate fees and does not furnish this Court with the required authorization, this Court will dismiss the appeal in 30 days unless within that time the prisoner files in this Court the required authorization.

### Conclusion

Since Leonard has not complied with the PLRA and will now become aware, from this

---

**3.** The prisoner's authorization shall be substantially in the following form (which has been adapted from the form currently in use in the District Court for the Southern District of New York):

> I, _____, request and authorize the agency holding me in custody, to send to the clerk of the United States Court of Appeals for the Second Circuit a certified copy of the statement for the past six months of my trust fund account (or institutional equivalent) at the institution where I am incarcerated. I further request and authorize the agency holding me in custody to calculate and disburse funds from my trust fund account (or institutional equivalent) in the amounts specified by 28 U.S.C. § 1915(b). This authorization is furnished in connection with an appeal, and I understand that the total appellate filing fees for which I am obligated are $105. I also understand that these fees will be debited from my account regardless of the outcome of my appeal. This authorization shall apply to any

other agency into whose custody I may be transferred.

Unlike the authorization form in use in the Southern District, our form omits from the second sentence the concluding words "if so required by the court" because it is our view that, under the PLRA, every prisoner seeking to appeal without prepayment of fees must become obligated to pay the fees required by subsection 1915(b) and no further order of this Court is needed.

**4.** Fees are paid to the clerk of a district court for commencing an appeal. Fed.R.App.P. 3(e) (requiring $5 filing fee pursuant to 28 U.S.C. § 1917 and $100 docketing fee pursuant to the Judicial Conference Report). Fees are paid to the clerk of a court of appeals for commencing a petition for review of an agency decision, Fed.R.App.P. 15(e) (requiring $100 docketing fee pursuant to the Judicial Conference Report), or for commencing an application for an extraordinary writ, Fed.R.App.P. 21(a) (same).

opinion, of the minimum steps he must take to bring himself into compliance, his appeal will be dismissed in 30 days unless within that time Leonard files in this Court an authorization, in the form set forth in note 2, or as subsequently promulgated by the Clerk's Office, to facilitate transmission from his place of incarceration to this Court of the certified copy of his prison fund account statement and the initial and subsequent payments of the $105 in appellate fees. Leonard is cautioned that if he avoids dismissal of his appeal by filing the required authorization and the appeal is subsequently determined to be frivolous or for any other reason is later dismissed, the $105 of appellate fees will continue to be debited from his prison account.