Clarence Duke McGANN,
Plaintiff–Appellant,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION, Defendant–
Appellee.

Docket No. 96–6071.

United States Court of Appeals,
Second Circuit.

Submitted July 10, 1996.

Decided Sept. 9, 1996.

Before: NEWMAN, Chief Judge,
WINTER and MINER, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This motion for leave to appeal *in forma pauperis* ("i.f.p.") and assignment of counsel presents the issue of whether a prisoner who files an appeal while incarcerated and is later released while the appeal is pending must pay filing fees pursuant to the Prisoner Litigation Reform Act of 1995 ("PLRA"). Clarence Duke McGann appeals from a judgment of the District Court for the Eastern District of New York (Sterling Johnson, Judge) dismissing his suit against the Commissioner of Social Security. We conclude that the PLRA fee requirements are not applicable to a re-

leased prisoner. Nevertheless, since the appeal is frivolous, we deny the motion for leave to appeal i.f.p., dismiss the appeal, and deny as moot the motion for appointment of counsel.

## Background

1. *McGann's lawsuit.* McGann's complaint, filed while he was a New York state prisoner, challenged the policy of the Social Security Administration denying certain benefits to prisoners. The District Court granted McGann leave to proceed i.f.p., but simultaneously dismissed the complaint as frivolous. The Court ruled that mandamus was unavailable because any claim for benefits could be pursued with the Social Security Administration, and that the Court lacked jurisdiction to grant relief because administrative remedies had not been exhausted. McGann filed a motion for rehearing, which was denied. He then filed a notice of appeal from the order denying rehearing.

2. *PLRA procedure.* After McGann filed his notice of appeal, he filed a motion in this Court for assignment of counsel. On April 26, 1996, while that motion was pending, the President signed the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. 104–134, 110 Stat. 1321 (1996), Title VIII of which is the Prison Litigation Reform Act of 1995. Section 804 of the PLRA imposes filing fee requirements on prisoners. *See Leonard v. Lacy,* 88 F.3d 181 (2d Cir. 1996). Thereafter, this Court established a procedure for implementing the PLRA fee requirements, *see id.* at 187, and also ruled that the PLRA and the *Leonard* procedure applied to appeals pending when the PLRA became effective, *see Covino v. Reopel,* 89 F.3d 105 (2d Cir.1996), at least those to which no substantial judicial resources had yet been devoted.

Since McGann's complaint had been dismissed by the District Court as frivolous, the Clerk's Office of this Court, following its usual practice, considered his i.f.p. status to have been revoked, *see* 28 U.S.C. § 1915(e) (as amended), and required appellant either to pay required fees or move in this Court for leave to appeal i.f.p. In addition, the Clerk's Office, on July 22, 1996, acting pursu-

ant to the *Leonard* procedure, sent McGann a notice of intent to dismiss unless, within 30 days, he filed an authorization form, authorizing the institution where he was incarcerated to send this Court a certified copy of his prison account statement for the past six months and to debit from his prison account the fee payments required by the PLRA. In a letter filed July 30, 1996, McGann replied that his financial resources were minimal, thereby implying that he qualified for i.f.p. status, but that he was not required to comply with the PLRA requirements because he was no longer a prisoner.

## Discussion

I. Application of PLRA requirements to released prisoners

Our initial question is whether the PLRA requirements, applicable to a person who files an appeal (or a complaint) while a prisoner, continue to apply after the person has been released from confinement. Section 804(a)(3) of the PLRA states that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1) (as amended). Section 804(a)(3) also specifies that the payments are to be made in installments: the initial payment is 20 percent of the greater of the average monthly deposits in the prisoner's account or the average balance in the account for the six months preceding the filing of a complaint or notice of appeal; subsequent payments are 20 percent of the preceding month's income credited to the prisoner's account in each month that the account exceeded $10. *Id.* § 1915(b)(1), (2) (as amended).

These provisions create a facial inconsistency as applied to a released prisoner. On the one hand, the statute broadly states that a prisoner who files an appeal "shall be required" to pay filing fees, and McGann was a prisoner when he filed his appeal. On the other hand, the amounts required to be paid are to be calculated as percentages of the balances of, or deposits into, the prisoner's prison account and are to be debited from that account, and now that McGann is no

longer a prisoner, there is no prison account from which to calculate and debit the required payments. Thus, a literal reading of all provisions of the PLRA, as applied to released prisoners, is not possible.

There are two ways this facial inconsistency could be resolved. The PLRA could be construed to mean that once a prisoner files a complaint or appeal, he becomes liable for the full amount of filing fees, and, if released, must then pay the entire remaining amount of those fees or have his complaint or appeal dismissed. Alternatively, the PLRA could be construed to mean that the required partial fee payments are to be made only while the prisoner remains in prison, and that, upon his release, his obligation to pay fees is to be determined, like any non-prisoner, solely by whether he qualifies for i.f.p. status.

We think that the second construction better conforms to the overall structure of the PLRA. Though Congress specified that a prisoner "shall" pay the full amount of filing fees, the detailed mechanism it created for implementing this obligation by debiting prison accounts demonstrates that Congress expected the new payment requirement to apply to a prisoner who remains incarcerated. Indeed, if the payment obligation continued after release, the released prisoner, lacking a prison account from which partial payments could be debited, would have to pay the entire balance of the fee in a single payment, a result that would be more onerous than that imposed on those who remain incarcerated. It is not likely that Congress intended such a result. A released prisoner may litigate without further prepayment of fees upon satisfying the poverty affidavit requirement applicable to all non-prisoners.

This construction of the PLRA fully comports with the congressional purpose of deterring prisoner suits by making their prison accounts subject to fee payments. *See Leonard,* 88 F.3d at 185. Though it is arguable that not imposing continued fee payment obligations on released prisoners lessens the deterrent that might inhibit those prisoners about to be released from filing lawsuits, any prisoner so inclined, who might be deterred by a continued fee payment obligation, could simply wait until release and then file law-suits. Apprehension about prisoner suits being filed just prior to release, therefore, does not justify applying the PLRA requirements to released prisoners.

## II. The Merits

■ Though not requiring continued compliance with PLRA requirements, we will follow our normal practice, where an appellant seeks i.f.p. status on appeal, of making an initial determination of whether the appeal surmounts the standard of "frivolousness" before ruling on an i.f.p. application. *See Leonard,* 88 F.3d at 184.

■ Even if we assume that McGann is endeavoring to appeal not only the District Court's denial of rehearing but also the prior dismissal of his complaint, his challenge to both rulings is so indisputably lacking in merit as to be "frivolous" within the meaning of 28 U.S.C. § 1915(e) (as amended). *See Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The District Court lacked jurisdiction to consider McGann's complaint because he had failed to present his claim for benefits to the Social Security Administration. *See Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976).

The motion for leave to appeal *in forma pauperis* is denied, and the appeal is dismissed as frivolous; the motion for assignment of counsel is denied as moot.

MINER, Circuit Judge, dissenting:

Because I am of the opinion that McGann must pay the full filing fee before any further consideration may be given to his appeal, I respectfully dissent.

The statute in question is clear enough: "[I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1) (as amended). I see no reason to ascribe any meaning to that provision other than its plain meaning: one who chooses to sue or appeal while incarcerated is responsible for the payment of the entire filing fee. Although the statute goes on to allow deductions from the prisoner's account in installments as one

 

means of payment, 28 U.S.C. § 1915(b)(1)-(2) (as amended), it contains no provision to forgive the debt upon release from confinement.

There is no question that the statute was enacted to discourage the filing of frivolous suits and appeals by prisoners. Congress apparently thought that such meritless litigation was causing a serious drain on federal court resources. The statute was *not* enacted to discourage the filing of frivolous appeals by those who are not prisoners, and the fact that one who has been released from prison may file an appeal in an action relating to prison conditions or other civil matters was not within the orbit of congressional concern. My colleagues say that the burden upon a released prisoner required to pay after release the balance of a filing fee partially paid during incarceration would be "more onerous" than the burden imposed upon those who remain incarcerated. I do not see this burden, if indeed it is one, as contravening the congressional purpose.

My colleagues acknowledge the possibility that the conclusion they reach may lessen the deterrent to filing in the case of prisoners about to be released. They find this possibility outweighed, however, by the fact that a prisoner so inclined could in any event wait until release and then commence an action or file an appeal *in forma pauperis* without payment of fee. The short answer to that argument lies in the experience of federal judges throughout the nation: prisoners are much less likely to pursue frivolous litigation after their release from confinement. I must assume that this experience was not unknown to Congress.

Finally, it just makes no sense to me to allow a prisoner to take the balance in his prison account with him upon his release and owe nothing further on his filing fee. The decision we render today allows him to do so. The partial payment provision requires an initial payment of 20 percent of the greater of the average monthly deposits to the account or the average monthly balance in the account for the 6-month period preceding the filing. § 1915(b)(1)(A)-(B). Subsequent payments are to be computed on the basis of 20 percent of the income credited to the account during the preceding month. § 1915(b)(2). We have established a procedure that requires dismissal of the appeal unless the prisoner signs a form authorizing these deductions. *Leonard v. Lacy,* 88 F.3d 181, 187 (2d Cir.1996). Despite the deductions, a prisoner may have substantial funds remaining in his account at the time he is discharged from confinement. It cannot be the intent of Congress that the remaining funds not be applied to the filing fee.

But there is no need to delve into questions of congressional intent in this case. My dissent is compelled by the simple and familiar principle that when the language of a statute is plain and enacted within the constitutional authority of Congress, as it is here, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).