**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-20720

(Summary Calendar)
_____

IRA JACKSON, JR,

                              Plaintiff - Appellant,

versus

JOHN STINNETT; KENT RAMSEY; ROCHELLE
MCKINNEY; JIM GANT,

                              Defendants - Appellees.

_____

Appeal from the United States District Court
For the Southern District of Texas
_____
December 11, 1996

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Ira Jackson, Jr., a Texas inmate, appeals the district court's dismissal of his 42 U.S.C. § 1983 action alleging violation of his Eighth Amendment rights. His appeal raises several issues of first impression in this circuit regarding new *in forma pauperis* provisions of the Prison Litigation Reform Act.

I

Jackson filed this section 1983 action against several prison officials, alleging deliberate indifference to his medical needs, and the district court certified him to proceed *in forma pauperis* ("i.f.p."). While this litigation was pending in the district

court, the President signed into law the Prison Litigation Reform Act, P. L. No. 104-207, 110 Stat. 1321 (1996) ("PLRA" or "Act"), which modified several statutes governing Jackson's appeal. Soon after the enactment of the PLRA, the district court dismissed Jackson's suit as frivolous under the old provisions of 28 U.S.C. § 1915(d)[1] concluding that Jackson's claim had no arguable basis in law. The court did not decertify Jackson's i.f.p. status, and Jackson filed a timely appeal to this court.

## II

Before we review the district court's dismissal on the merits, we must first consider the effect of the PLRA on this appeal. The Act amended 28 U.S.C. § 1915 to require new filing procedures and fees for prisoners proceeding i.f.p.[2] Both the filing and fee requirements of the PLRA stand in apparent conflict with Fed. R. App. P. 24(a), which states that once the district court certifies a prisoner to proceed i.f.p., "the party may proceed without further application to the court of appeals and without prepayment of fees or costs in either court or the giving of security therefor." We must consider whether the PLRA amends the Federal Rules of Appellate Procedure, whether to require Jackson to replead his pauper status, and whether to assess Jackson a fee for this appeal, all issues of first impression for this circuit.

---

[1] The PLRA moves the provision by which the district court may dismiss a pending action from section 1915(d) to section 1915(e)(2)(B).

[2] Our review poses no issue of retroactive application of the statute, because Jackson filed his notice of appeal after the Act became law. *Leonard v. Lacy*, 88 F.3d 181, 184 (2d Cir. 1996).

A

As amended, section 1915(a) provides that a prisoner filing a civil appeal i.f.p. must file an affidavit listing all his assets, as well as submit a certified copy of his prison trust fund account statement for the preceding six-month period. The financial affidavit Jackson filed in the district court (before the PLRA was signed) does not meet the updated requirements, thus amended section 1915(a) required him to file a new affidavit upon his subsequent appeal to this court. However, Fed. R. App. P. 24(a) provides that, unless the district court decertifies the prisoner's i.f.p. status, that prisoner may appeal his case i.f.p. without further application to the court. The statute would require Jackson to reapply to this court with a new affidavit; the Rule would carry forward his i.f.p. certification from the district court. Faced with competing mandates, we must decide whether Congress's procedural litigation reforms in the PLRA take precedence over the rules of appellate procedure.

It has long been settled that Congress has the authority to regulate matters of practice and procedure in the federal courts. *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9-10, 61 S. Ct. 422, 424, 85 L. Ed 479 (1941); *Wayman v. Southard*, 10 U.S. (Wheat) 1, 21, 6 L. Ed. 253 (1825). Congress delegated some of this power in 1934 by passing the Rules Enabling Act, which gave the Supreme Court the power to promulgate rules of practice and procedure for United States courts. 28 U.S.C. §§ 2071-72. Despite this delegation of authority, Congress maintains an integral, albeit passive, role in

implementing any rules drafted by the Court.  For example, all such rules are subject to review by Congress; they take effect only after the Supreme Court has presented them to Congress and after Congress has had seven months to review proposed rules or changes. *Id*. § 2074.  Congress uses the review period to "make sure that the action under the delegation squares with the Congressional purpose." *Sibbach*, 312 U.S. at 15, 61 S. Ct. at 427.  Although Congress has authorized the Court to exercise some legislative authority to regulate the courts, Congress at all times maintains the power to repeal, amend, or supersede its delegation of authority or the rules of procedure themselves. *United States v. Mitchell*, 397 F. Supp. 166,  170 (D.D.C. 1974), *aff'd*, 559 F.2d 31 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 933, 97 S. Ct. 2641, 53 L. Ed. 2d 250 (1977); *United States v. Isaacs*, 351 F. Supp. 1323, 1328 (N.D. Ill. 1972), *aff'd*, 493 F.2d 1124 (7th Cir. 1974).  Therefore Congress may at any time amend or abridge by statute the Federal Rules of Civil Procedure, Rules of Appellate Procedure, Rules of Evidence, or other federal procedural rules promulgated under the Rules Enabling Act. *Hawkins v. United States*, 358 U.S. 74, 78, 79 S. Ct. 136, 138, 3 L. Ed. 2d 125 (1958); *Mitchell*, 397 F. Supp at 170.

There are two limits to Congress's power to amend the Federal Rules of Appellate Procedure.  First, in granting to the Supreme Court the power to make federal procedural rules, the Rules Enabling Act stipulates that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have

taken effect." 28 U.S.C. § 2072(b). On its face, this so-called "abrogation clause" seems to invalidate all federal statutes "in conflict" with court rules. The abrogation clause, however, has never been read so broadly. By qualifying the clause to say that offending statutes will not have *further* effect *after* the rule takes effect, the abrogation provision requires that the offending statute have some effect before the rule's enacting date.

Consistent with this observation, courts and commentators generally consider the abrogation clause to trump only statutes passed before the effective date of the rule in question. *Penfield Co. v. Securities & Exch. Comm'n*, 330 U.S. 585, 589 n.5, 67 S. Ct. 918, 921 n.5, 91 L. Ed. 1117 (1947); *see also* 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1030 at 125 & n.2 (2d ed. 1987) ("Statutes enacted prior to the rules that are inconsistent with them are superseded."); Note, *The Conflict Between Rule 68 and the Civil Rights Attorneys' Fees Statute: Reinterpreting the Rules Enabling Act*, 98 Harv. L. Rev. 828, 835 (1985) ("[T]he abrogation provision has been understood to apply to inconsistent statutes enacted before the rules.").[3]

---

[3] Another good reason not to read the abrogation clause to nullify provisions of the PLRA is that such a reading approaches a violation of the Presentment Clause and the nondelegation doctrine. The abrogation clause of the Rules Enabling Act purports to give the Supreme Court the legislative power to repeal any federal law governing practice and procedure in the courts. Under the Rules Enabling Act, the Court need only report such changes to Congress in the form of a rule, which would acquire the force of law without Congress ever casting a single vote. To say the least, such a power would strain the Constitution's limits on the exercise of the legislative power. U.S. Const. art. I, § 7, cl. 2; *INS v. Chadha*, 462 U.S. 919, 950-51, 103 S. Ct. 2764, 2784, 77 L. Ed. 2d 317 (1983); *A.L.A. Schecter Poultry Corp. v. United States*, 295 U.S. 495, 529, 55 S. Ct. 837, 843, 79 L.Ed. 1570 (1935); *see also* Note, *supra*, 98 Harv. L. Rev. at 836-37. To avoid such a drastic result, we will not construe the abrogation clause to dictate that Rule 24(a) invalidates Congress's subsequent amendments of i.f.p. procedure.

By contrast, courts and commentators agree that a statute passed after the effective date of a federal rule repeals the rule to the extent that it actually conflicts. *Autoskill Inc. v. National Educ. Support Sys., Inc.*, 994 F.2d 1476, 1485 (10th Cir. 1993); 2 James Wm. Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶ 1.02[5] at 10 (2d ed. 1996) ("A clearly inconsistent statute enacted subsequent to [the Rule's effective date] would . . . supersede or modify any conflicting Rule."). The Supreme Court promulgated the Federal Rules of Appellate Procedure by an order entered December 4, 1967 making the Rules effective on July 1, 1968, *see* 43 F.R.D. 61, 67, 113, and the Court last amended Rule 24 on March 10, 1986 (effective July 1, 1986). Therefore under the conventional reading of the abrogation clause, Rule 24 does not nullify section 1915 of the PLRA, which became effective on April 26, 1996. Quite the opposite, the PLRA repeals the inconsistent provisions of Rule 24(a). *See* 7 Moore & Lucas, *supra*, at ¶ 86.04[4] at 22 ("[A] subsequently enacted statute should be so construed as to harmonize with the Federal Rules if that is at all feasible. If, however, there is a clear inconsistency then the rule must give way because of the paramount power of Congress . . . .").

The second limit on Congress's power to amend the Rules is the general disfavor with which we view implicit amendment or repeal of statutes. In the absence of a clear statement from Congress, we are reluctant to hold that the PLRA implicitly amends a Federal Rule. The PLRA does not mention the Rule, although both clearly

-6-

govern the same procedure governing i.f.p. appeals.

It is hornbook law that "repeals by implication are not favored." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442, 107 S. Ct. 2494, 2497, 96 L. Ed. 2d 385 (1987); *Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S. Ct. 349, 352, 80 L. Ed. 351 (1936); *Ysleta del sur Pueblo v. Texas*, 36 F.3d 1325, 1334-35 (5th Cir. 1994). However, courts long ago established an exception to the repeal-by-implication rule: "Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one." *Posadas*, 296 U.S. at 503, 56 S. Ct. at 352. To the extent that the Rules Enabling Act (as expressed in Rule 24(a)) actually conflicts with the PLRA, we hold that the statute repeals the Rule. We therefore hold that the PLRA governs Jackson's appeal in this court.

B

For the reasons articulated above, the PLRA governed this case from the day it was signed, and Jackson's subsequent notice of appeal triggered the new i.f.p. certification requirements for his appeal. In the most technical sense, Jackson was not properly certified to proceed i.f.p. in this appeal. *See*, *e.g.*, *Thurman v. Gramley*, 97 F.3d 185, 187 (7th Cir. 1996) (applying PLRA to prisoner who filed notice of appeal after effective date of Act). Therefore the PLRA requires that Jackson meet the new i.f.p. requirements before we reach the merits of his appeal.

Several equitable considerations persuade us not to dismiss

Jackson's appeal altogether.  First, the district court decided this case after the PLRA became law, but did not mention the new statute.  Jackson apparently never knew that the statute governed his appeal, and therefore did not submit the affidavits required by the new law.  Second, the PLRA requires little more than a change in form of pleading pauper status.  *Compare* R. at 14 (Jackson's petition to proceed i.f.p. in district court) *with* 28 U.S.C. § 1915(a).  The major deficiency in Jackson's i.f.p. request in the district court is that it does not meet the section 1915(a)(2) requirement of a trust fund account statement.  Third, requiring Jackson to start from square one will needlessly delay this litigation.  Jackson has briefed the court, and this appeal has progressed to the point of decision.  Finally, there is no indication that Congress meant the new i.f.p. requirements to be jurisdictional, so we retain jurisdiction to hear Jackson's case. Section 1915(b) deals only with the administration of fees, not the jurisdiction of the courts.

Instead of dismissing Jackson's appeal, we will allow him thirty days to file a new petition to proceed i.f.p. consistent with section 1915(a).  If Jackson files a modified petition to proceed i.f.p. within that time, we will hear his appeal without requiring him to file a new notice of appeal or new briefs.  If he fails to file within thirty days, we will dismiss his appeal.  *See* *Covino v. Reopel*, 89 F.3d 105, 108-09 (2d Cir. 1996) (applying PLRA and giving plaintiffs 30 days to meet statutory requirements).

-8-

We also hold that the fee provisions of the PLRA apply to Jackson's appeal. Section 1915(b)(1), as amended by the PLRA, provides that if a prisoner files an appeal i.f.p., he "shall" pay a filing fee. As noted above, this provision conflicts with Fed. R. App. P. 24(a), which provides that, once certified, Jackson may proceed "without prepayment of fees or costs in either court." The new PLRA provision was in effect when Jackson signed his notice of appeal, and for the reasons cited above, we hold that, to the extent that Rule 24 would bar operation of the new statute, the provisions of the PLRA take precedence over Rule 24.

Therefore we will assess the fee if Jackson chooses to replead his case i.f.p. Congress has directed us to charge all prisoners for appeals filed after April 26, 1996: "if a prisoner brings a civil action or files an appeal *in forma pauperis*, the prisoner *shall* be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1) (as amended) (emphasis added). Although the statute attaches the fee requirement upon the *filing* of an appeal, *Leonard v. Lacy*, 88 F.3d 181, 184-86 (2d Cir. 1996); *Martin v. United States*, 96 F.3d 853, 856 (7th Cir. 1996), we will not assess fees against Jackson unless and until he decides to reapply for i.f.p. status in the next thirty days. To assess Jackson a fee today would frustrate Congress's purpose in amending section 1915(b). The fee provisions of the PLRA were designed to deter frivolous prisoner litigation in the courts "by making all prisoners seeking to bring lawsuits or appeals feel the deterrent

effect created by liability for filing fees." *Leonard*, 88 F.3d at 185.  We choose not to assess Jackson a filing fee today so that the fee might have its intended deterrent effect when Jackson later decides whether to proceed.  Jackson should consider the filing fee when deciding whether or not his appeal has sufficient merit to pursue further.  Therefore, for the purposes of Jackson's appeal, we will consider his resubmission for i.f.p. status to be the filing of an appeal *in forma pauperis* under the Act.

Should Jackson decide to pursue his appeal i.f.p., we will assess and collect the filing fee from Jackson's account, subject to the repayment provisions of section 1915(b).  *See Thurman*, 97 F.3d at 187 (assessing fees for appeal filed after PLRA signed); *Leonard*, 88 F.3d at 184 (same).  If Jackson is unable to pay the fee, he may pay in installments as provided in section 1915(b).

### III

Accordingly, we will dismiss Jackson's appeal in thirty days unless he reapplies to proceed *in forma pauperis* within the procedures of 28 U.S.C. § 1915(a), as amended by the PLRA.  Should he decide to proceed with his appeal, we will assess filing fees under the amended provisions of the Act.

IT IS SO ORDERED.