James **IPPOLITO**, Plaintiff,

v.

Ed **BUSS**, et al., Defendant.

No. 2:02 CV 50.

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 18, 2003.

James Anthony Ippolito, Scu–Westville, Westville, IN, Pro se.

## ORDER

MOODY, District Judge.

In early 2003, plaintiff James Ippolito ("Ippolito") instituted a civil rights action under 28 U.S.C. § 1983 against defendant Ed Buss and others. On February 13, 2003, Ippolito applied to proceed *in forma pauperis*, and on March 18, 2003, this court granted the application, ordering, pursuant to 28 U.S.C. § 1915(b)(1) & (b)(2), that Ippolito pay an initial partial filing fee of $9.64, and that he make monthly payments of 20 percent of the preceding month's income credited to his inmate trust account until he has ultimately paid the full filing fee.

On March 18, 2003, this court also dismissed Ippolito's case pursuant to 28 U.S.C. § 1915A for failure to state a claim on which relief may be granted. Six months after dismissal, on September 2, 2003, Ippolito filed a "Motion to Suppress Filing Fees" in this case. Although the title of the motion is confusing and seems inappropriate after the dismissal of his claim, upon closer review of his motion, it appears that Ippolito is actually requesting that this court prevent further withdrawals on his prisoner's account to satisfy any unpaid portion of the filing fee originally incurred in this case, and allow him to pay the amount due no later than six months after his period of incarceration has ended. (*See* Pl.'s Mot. Suppress Filing Fees at 2). The court will now address this request.

In 1996, Congress enacted the Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321, which modified 28 U.S.C. § 1915, the statute governing *in forma pauperis* suits such as the one Ippolito brought before this court.[1] Congress modified § 1915 in hopes of deterring prisoners (whom Congress determined to be a particularly litigious group) from filing frivolous lawsuits and potentially wasting the courts' very limited resources;[2] making prisoners bear

1. Those particular provisions of 28 U.S.C. § 1915 relevant to the matter at hand are subsections (b)(1) & (b)(2) which state, in pertinent part:

   ... if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. 28 U.S.C. § 1915(b)(1).

   After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court ... until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

2. *See* 141 Cong. Rec. S14408–01, S14413 (daily ed. Sept. 27, 1995) (statement of Sen. Dole) ( prisoner's suits have "grown astronomically—from 6,600 in 1975 to more than 39,000 in 1994"); 141 CONG. REC. S7498–01, S7524 (daily ed. May 25, 1995) (statement of Sen. Dole) ("[P]risoners will now 'litigate at the drop of a hat,' simply because they have little to lose and everything to gain."); 141 Cong. Rec. S7498–01, S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl) ("Filing frivolous civil rights lawsuits has become a recreational activity for long-term residents of prisons."); *see also Abdul–Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir.2001) ("Congress [ ] enacted the Prison Litigation Reform Act ... largely in response to concerns about the heavy volume of frivolous prisoner litigation in the federal courts.") (citations omitted); *Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir.1997) ("Congress adopted the Prison Litigation Reform Act with the principal purpose of deterring frivolous prisoner lawsuits and appeals.") (citing *Leonard v. Lacy*, 88 F.3d 181, 185 (2d Cir.1996)); *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir.1996) ("The fee provisions of the [Prisoner's Litigation Reform Act] were designed to deter frivolous prisoner litigation in the courts 'by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees.'") (quoting *Leonard*, 88 F.3d at 185).

the cost of the full amount of a filing fee may ultimately have the effect of forcing prisoners to think twice before instituting a frivolous suit in federal court.[3]

With this purpose in mind, Congress drafted § 1915(b)(1), which *very clearly* states that "prisoner[s] shall be required to pay the *full amount of a filing fee.*" 28 U.S.C. § 1915(b)(1) (emphasis added). More importantly, Congress did not draft *any* exceptions to this requirement. *See* 28 U.S.C. § 1915(b)(1). Indeed, there is nothing in the language of § 1915(b)(1) suggesting that any prisoner under any circumstance is exempt from paying the full filing fee, nor is there anything in the language of the statute providing this court with the authority to exempt a prisoner from paying the full amount due. *See* 28 U.S.C. § 1915(b)(1). The absence of such "exempting" language makes logical sense in light of the statute's purpose which, again, is to stymy the proliferation of prisoner litigation by generating an economic incentive to only file those suits that the prisoner truly believes have merit. Accordingly then, regardless of a prisoner's particular situation, he is always fully responsible for (eventually) paying the entire filing fee for a suit he chose to institute in federal court.

Of course, realizing that persons in custody may not have the means to pay the full filing fee all at once, Congress, in § 1915(b)(2), has created a payment sched-

ule allowing a prisoner to pay the filing fee in monthly installments of "20 percent of the preceding month's income credited to the prisoner's account" until he has satisfied the full amount due (whatever and whenever that may be). 28 U.S.C. § 1915(b)(2). Like subsection (b)(1), there is nothing in this section suggesting that courts may depart from the explicit language of the statute. There is nothing suggesting that a prisoner may deviate from the payment schedule provided, or that a court may, as Ippolito asks this court to do, defer a prisoner's payment until he is released from custody. *See* 28 U.S.C. § 1915(b)(2). Certainly, deferring the required payments until after a prisoner has been released would destroy the purpose of the statute—the potentially constraining force of immediate liability would be lost. Filing a frivolous lawsuit becomes much easier to do if the repercussions for doing so appear far in the future, if at all. Moreover, ensuring payment of the full amount of filing fees is much easier while a prisoner is in custody and has a prisoner's trust account, it is not so simple once a prisoner has been released.

Thus, as § 1915 clearly requires that Ippolito pay the full filing fee, and does not provide this court with the authority to prevent the requisite withdrawals from his trust account or with the discretion to allow him to pay on a different schedule than that set forth in subsection (b)(2), Ippolito's "Motion to Suppress Filing

---

**3.** This sentiment was best expressed in *Carbonell v. Acrish,* in which the court stated, "[p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing lawsuits. Indeed, the very nature of incarceration—prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials—has fostered a 'nothing

to lose and everything to gain' environment which allows inmates indiscriminately to file suit at taxpayers' expense. As a result, the federal courts have observed that prisoner litigation has assumed something of the nature of a 'recreational activity.' By making prisoners at least partially responsible for the costs of their suits, the [Prisoner Litigation Reform Act] undoubtedly will discourage frivolous filings." 154 F.Supp.2d 552, 558 (S.D.N.Y.2001).

Fees" (docket # 6) is hereby **DENIED.** Therefore, Ippolito must continue making the requisite payments in monthly installments of 20 percent of the preceding month's income credited to his inmate trust account until the full amount due ($150.00) has been satisfied.

**SO ORDERED.**