## In re PRISON LITIGATION REFORM ACT.

### No. 97–01.

United States Court of Appeals, Sixth Circuit.

Feb. 4, 1997.

### ADMINISTRATIVE ORDER

BOYCE F. MARTIN, Jr., Chief Judge.

By enacting the Prison Litigation Reform Act, Pub.L. No. 104–134, §§ 801–10, 110 Stat. 1321 (1996), Congress has changed the scheme by which courts are to process requests for pauper status. No longer do courts first focus on the merits of a prisoner's complaint. Rather, it is the prisoner's financial status that the courts must initially examine. Pauper status for inmates, as we previously knew it, no longer exists. All prisoners while incarcerated must now pay the required filing fees and costs. When an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan. Prisoners are no longer entitled to a waiver of fees and costs. Therefore, to assure uniformity throughout the Sixth Circuit in the implementation of the Prison Litigation Reform Act, I am issuing this administrative order under my authority as Chief Judge until such time as panels of this court have the opportunity to address the numerous issues raised by the Act. This administrative order does not apply to cases filed under 28 U.S.C. § 2241, 28 U.S.C. § 2254, 28 U.S.C. § 2255, nor to original actions before the court of appeals.

### I. Prisoner Who Pays Filing Fee

When a prisoner files a complaint in the district court, the inmate must either pay the entire filing fee, or request leave to proceed in forma pauperis "without prepayment of fees or security therefor" under 28 U.S.C.A. § 1915(a)(1). If the inmate tenders the filing fee, the complaint is filed. Then, before service of process is made on the opposing parties, the district court must screen the case under the criteria of 28 U.S.C.A. § 1915(e)(2) and 28 U.S.C.A. § 1915A. The screening process must be in compliance with Section IV of this order.

### II. Prisoner Pauper Documents

If the inmate files a complaint and seeks pauper status, the prisoner must file either

---

Form 4 from the Appendix of Forms found in the Federal Rules of Appellate Procedure, or an affidavit which contains the identical information requested in Form 4. Although Form 4 does not satisfy the exact requirements of the statute, proposed amendments necessary to bring the Form into compliance with the Act are awaiting final approval. For administrative expediency, the present Form 4 will suffice for pauper requests. In addition to the affidavit, the prisoner must file a certified copy of a prison trust account statement showing the activity in the inmate's prison account for the previous six months. 28 U.S.C.A. § 1915(a)(2). By filing the complaint, the prisoner waives any objection to the fee assessment by the district court. Furthermore, the prisoner waives any objection to the withdrawal of funds from the trust account by prison officials to pay the prisoner's court fees and costs. Prisoners have a duty to cooperate during the litigation. *Ballard v. Burrage,* 97 F.3d 382, 383 (10th Cir.1996) (order). Payment of litigation expenses is the prisoner's responsibility. Once the complaint, affidavit of indigency, and trust account statement have been filed, the district court must issue the fee assessment as required under Section III and conduct the screening procedure set forth in Section IV.

## A. Failure To File Required Forms

If an inmate not paying the full filing fee fails to provide an affidavit of indigency or trust account statement, the district court shall notify the prisoner of the deficiency and the prisoner shall have thirty (30) days from the date of the deficiency order to correct the error or pay the full filing fee. If the prisoner does not comply with the district court's directions, the district court shall presume that the prisoner is not a pauper, and assess the inmate the full amount of fees. The district court must then order the case dismissed for want of prosecution. If the case is dismissed under these circumstances, it will not be reinstated to the district court's active docket despite the payment of filing fees.

## B. Extensions Of Time

A prisoner may seek leave to extend the thirty (30) day time period to correct any filing deficiency regarding pauper status. The district court may, in its discretion, grant such an extension for up to thirty (30) days as long as the inmate files the extension motion within thirty (30) days after the district court files the order of deficiency. The extension motion must be filed within thirty (30) days of the order; otherwise the motion may not be granted unless the prisoner makes an affirmative showing that he or she did not receive the deficiency order within the thirty (30) days. If such a showing is made in a notarized statement or a declaration complying with 28 U.S.C. § 1746 and setting forth the date the inmate received the notice, then the district court may, in its discretion, grant an additional thirty (30) days from the date of the filing of the extension order to allow the prisoner to correct the deficiency. The extension motion is deemed filed when the inmate gives the document to prison officials to be mailed. *See Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988). When the inmate places the motion in the prison mail system, the inmate must provide a notarized statement or declaration with the motion complying with 28 U.S.C. § 1746, setting forth the date of deposit, and stating that first class postage was prepaid. This declaration assures the court that the documents were timely given to prison officials.

## C. Inmate Without Any Funds

If the prisoner is without any financial resources as evidenced by the affidavit of indigency and trust account statement, under § 1915(b)(4) the district court must allow the case to proceed to the screening process. Although the statute permits a prisoner to avoid even partial payment of the filing fee at the commencement of the action, the district court is still required to impose an *initial* partial filing fee under § 1915(b)(1) and, when funds become available, the prisoner must pay the initial partial filing fee. The statute does not relieve the prisoner from paying the initial partial filing fee. The pay-

ment is simply delayed until funds become available.

Even if the account is under ten dollars ($10), prison officials must still forward payments to the district court to pay the initial filing fee. The ten dollar ($10) rule of § 1915(b)(2) is applicable to fees and costs due only after the initial filing fee is paid. Once the initial filing fee is paid in full, the ten dollar ($10) and twenty percent (20%) requirements of § 1915(b)(2) become applicable. This process will prevent the problem of inmates keeping only minimum balances in their prison accounts to avoid paying any portion of the filing fee. The payments must be made even if the final judgment and appeal occurred several years before the deposit of funds.

### III. Assessment Procedure

The key to the assessment procedure is the trust account. As the balance in the account can literally change on a daily basis, the first issue which must be addressed is what date controls for purposes of § 1915(b)(1). Because the trust account is so fluid, the date the complaint or the notice of appeal is filed with the clerk of the district court will be the controlling date for the computation of time under § 1915(b)(1). As both of these dates are certain and within the immediate knowledge of the district court; the date these documents are filed in the district court is thus the easiest and most logical date to use. *See also* 28 U.S.C.A. § 1915(a)(2) (prisoner must submit trust account statement for six (6) month period immediately preceding the "filing of the complaint or notice of appeal"). Although courts could use the date the prisoner mails the complaint or notice of appeal to the district court, *see Houston*, 487 U.S. at 270, 108 S.Ct. at 2382, this option would cause confusion and delay in the assessment process as many prisoners do not provide a written declaration as to when documents are given to prison officials for mailing. If courts accepted the date of mailing, the district courts would waste needless hours adjudicating disputes concerning when the documents were mailed.

The fluctuating nature of trust funds makes it difficult to keep the information in the trust account summaries current for mailing to the district courts. If a district court decides to make an assessment computation, prison officials should supply the district court with the necessary financial records so the district court may make the required assessment. If a district court chooses to calculate the assessment, inmates could constantly argue that the assessments were based on stale information. This process would create needless litigation over a few pennies. The solution to this problem is to have the custodian of the account do the computation and then send the money to the district court. To accomplish this goal, the district courts may issue an order containing language similar to the following:

> Pursuant to 28 U.S.C.A. § 1915(b)(1), the custodian of [prisoner's name] inmate trust account at the institution where [he or she] now resides is directed to submit to the Clerk of the United States District Court for the [Eastern, Western, Northern, Southern, Middle] District of [State], as an initial partial payment, twenty percent (20%) of the greater of:
>
> (a) the average monthly deposits to the inmate trust account; *or*
>
> (b) the average monthly balance in the inmate trust account, for the six (6) months immediately preceding the filing of [the complaint or notice of appeal] on [date].
>
> After full payment of the initial partial filing fee, the custodian shall submit twenty percent (20%) of [prisoner's name] preceding monthly income credited to the account, but only when the amount in the account exceeds ten dollars ($10), until the full fees of one hundred and fifty dollars ($150) have been paid to the clerk of this court. 28 U.S.C.A. § 1915(b)(2).

A magistrate judge may issue a fee assessment order or grant an extension of time pursuant to 28 U.S.C. § 636(b)(1)(A) as these are non-dispositive decisions. Even a voluntary dismissal of a complaint or an appeal does not eliminate a prisoner's obligation to pay the required filing fees. Section 1915(b)(1) compels the payment of the respective fees at the moment the complaint or notice of appeal is filed. Any subsequent

dismissal of the case, even if voluntary, does not negate this financial responsibility. However, a case may not be dismissed when the payment of an assessment has been delayed by prison officials. A prisoner cannot be penalized when prison officials fail to promptly pay an assessment.

## IV. Screening

When screening a prisoner complaint, a district court must examine 28 U.S.C.A. § 1915(e)(2) and 28 U.S.C.A. § 1915A. If the civil action seeks redress from a governmental entity, officer, or employee, the district court must dismiss the complaint, or any portion of the complaint, which (a) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (b) seeks monetary relief from a defendant who is immune from monetary relief. 28 U.S.C.A. § 1915A.

Should the complaint contain any allegations that do not fall within § 1915A, the district court must then examine the complaint under § 1915(e)(2). The requirements of § 1915(e)(2) overlap the criteria of § 1915A. Section 1915A is restricted to prisoners who sue government entities, officers, or employees. In contrast, § 1915(e)(2) is neither restricted to actions brought by prisoners, nor to cases involving government defendants. Further, § 1915A is applicable at the initial stage of the litigation. Section 1915(e)(2) is applicable throughout the entire litigation process. Thus, a case that may not appear to initially meet § 1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section. Therefore, in prisoner cases, the district court must first examine a complaint under § 1915A and then review the complaint under § 1915(e)(2) before the case may proceed in normal course. District courts are required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel, as the statute does not differentiate between civil actions brought by prisoners. The dismissal of a complaint under § 1915(e)(2) or § 1915A does not negate a prisoner's obligation to pay the filing fee in accordance with § 1915(b)(1).

## V. Civil Complaints From Indigent Non–Prisoners

Civil complaints brought by indigent non-prisoners in the district court differ from civil cases brought by indigent prisoners. Like prisoners, a non-prisoner seeking pauper status in the district court must file an affidavit listing all of his or her assets. 28 U.S.C.A. § 1915(a)(1). Therefore, indigent non-prisoners seeking pauper status, regardless of whether they are represented by counsel, must file Form 4 from the Appendix of Forms located in the Federal Rules of Appellate Procedure, or an affidavit which contains the same information found in Form 4. Once the affidavit is filed, a pauper determination may be made.

### A. Screening Process

Unlike prisoner cases, complaints by non-prisoners are not subject to the screening process required by § 1915A. However, the district court must still screen the complaint under § 1915(e)(2). *See Floyd v. United States Postal Serv.*, 105 F.3d 274, 277–79 (6th Cir.1997) (applying Act to cases brought by non-prisoners). Even if a non-prisoner pays the filing fee and/or is represented by counsel, the complaint must be screened under § 1915(e)(2). The language of § 1915(e)(2) does not differentiate between cases filed by prisoners and cases filed by non-prisoners. The screening must occur even before process is served or the individual has had an opportunity to amend the complaint. The moment the complaint is filed, it is subject to review under § 1915(e)(2). If the complaint falls within the requirements of § 1915(e)(2) when filed, it must be dismissed.

Section 1915(e)(2) states that regardless of whether a filing fee has been paid, the district court must dismiss the case if the complaint satisfies the factors of § 1915(e)(2). Thus, even if the filing fee is paid, the district court must dismiss the complaint if it comports with § 1915(e)(2). The statute, therefore, supersedes our decision of *Clark v. Ocean Brand Tuna*, 974 F.2d 48, 50 (6th Cir.1992) (per curiam).

## B. Failure To File Required Forms

Like prisoner suits, the affidavit of indigency from a non-prisoner must be filed with the tendered complaint. Courts first must examine the individual's financial status, so the non-prisoner must file an affidavit of indigency to proceed as a pauper. If the non-prisoner fails to pay the full filing fee or fails to file the affidavit with the complaint, the district court shall notify the non-prisoner of the deficiency and the non-prisoner shall have thirty (30) days to correct the error. Should the non-prisoner fail to file the full filing fee or the affidavit of indigency, the district court shall presume that the individual is not a pauper and dismiss the case for want of prosecution. Even if the individual tenders the filing fee after the dismissal, the case shall not be reinstated to the district court's active docket.

As in prisoner cases, the non-prisoner may seek an extension of time to file an affidavit or to pay the filing fee. However, the non-prisoner must file the extension with the clerk of the district court, see Fed.R.Civ.P. 5(e), within thirty (30) days of the district court's deficiency order, or the motion may not be granted unless the individual makes an affirmative showing that he or she did not receive the deficiency order within the thirty (30) days. If such a showing, setting forth the date of actual receipt, is made in a notarized statement or a declaration complying with 28 U.S.C. § 1746, then the district court may, in its discretion, grant an additional thirty (30) days from the date of the filing of the extension order to allow the individual to complete the deficiency.

## VI. Appeals By Prisoners

The enactment of the Prison Litigation Reform Act has also affected the appeal process. If a prisoner wishes to appeal an order or a judgment of the district court, the prisoner must file a notice of appeal. A prisoner not seeking pauper status, must pay the entire filing fee with the clerk of the district court upon filing the notice of appeal. Fed. R.App. P. 3(e). If such a prisoner fails to pay the required fees with the notice of appeal, the district court shall inform the prisoner of the deficiency. The prisoner shall be warned that should he or she not pay the entire filing fee within thirty (30) days of the filing of the district court's deficiency order, or take the required steps to seek pauper status on appeal, the court of appeals may dismiss the appeal for failure to prosecute under Fed. R. App. P. 3(a) and the district court will assess the entire filing fee. If dismissed, the appeal will not be reinstated despite the subsequent payment of the filing fee or request for pauper status.

The district court's deficiency order shall be sent to the clerk of this court. Fed. R.App. P. 3(d). The prisoner may request from the district court an extension of time to pay the filing fee or to seek pauper status. The motion must be filed within thirty (30) days of the district court's deficiency order, or the extension motion will not be granted unless the prisoner makes an affirmative showing that he or she did not receive the deficiency order within the thirty (30) days. If such a showing is made in a notarized statement or a declaration complying with 28 U.S.C. § 1746 and setting forth the date the prisoner received the notice, then the district court may, in its discretion, grant an additional thirty (30) day extension to allow the prisoner to rectify the deficiency. The extension motion will be deemed filed once the motion is given to prison authorities for mailing and the prisoner has satisfied the verification requirements of Fed. R.App. P. 25(a)(2)(C). See also Houston, 487 U.S. at 270, 108 S.Ct. at 2382. The clerk of the court of appeals shall continue to monitor the fee status of each appeal. Should the prisoner fail to comply with the district court's deficiency order, the clerk of the court of appeals shall dismiss the case for want of prosecution and the district court will assess the entire filing fee, which is to be made payable to the clerk of the district court. Once dismissed under these circumstances, the appeal will not be reinstated even if the filing fee is subsequently paid.

## A. Pauper Status On Appeal

If a prisoner wishes to proceed in forma pauperis on appeal, the prisoner must file in the district court, with the notice of appeal, a motion for leave to proceed in forma pauper-

is, a certified copy of a prison trust account statement, and Form 4 from the Appendix of Forms found in the Federal Rules of Appellate Procedure, or an affidavit which contains the same detailed information found in Form 4. Unlike the former concept of pauper status, an individual or prisoner granted pauper status before the district court is not automatically entitled to pauper status on appeal. *See Floyd,* 105 F.3d at 277–79; *Jackson v. Stinnett,* 102 F.3d 132, 134–36 (5th Cir.1996) (noting that Prison Litigation Reform Act has superseded parts of Fed. R.App. P. 24(a)). The statute requires that a prisoner seeking pauper status on appeal must file an affidavit of indigency and a certified copy of the prison trust account statement. 28 U.S.C.A. §§ 1915(a)(2), 1915(b)(1).

## B. Failure To File Required Documents

Should the prisoner fail to file the affidavit of indigency or the trust account statement, the district court shall notify the prisoner of the deficiency. The district court shall inform the prisoner that should the prisoner not file the required documents within thirty (30) days, the court of appeals may dismiss the appeal for want of prosecution under Fed. R.App. P. 3(a) and in which case the district court will assess the entire filing fee. If dismissed under these circumstances, the appeal will not be reinstated despite the payment of the full filing fee or subsequent correction of the deficiency.

The prisoner may request from the district court an extension of time to pay the filing fee or seek pauper status. The motion must be filed within thirty (30) days of the district court's deficiency order or the extension motion will not be granted unless the prisoner makes an affirmative showing that he or she did not receive the deficiency order within the thirty (30) days. If such a showing sets forth the date the prisoner received the deficiency order and is made in a notarized statement or a declaration complying with 28 U.S.C. § 1746, then the district court may, in its discretion, grant an additional thirty (30) days from the date of the filing of the extension order to allow the prisoner to correct the deficiency. The extension motion will be

deemed filed once the motion is given to the prison authorities for mailing and the prisoner has satisfied the verification requirements of Fed. R.App. P. 25(a)(2)(C). *See also Houston,* 487 U.S. at 270, 108 S.Ct. at 2382. The clerk of the court of appeals shall continue to monitor the fee status of each appeal. Should the prisoner fail to comply with the district court's deficiency order, the clerk of the court of appeals shall dismiss the case for want of prosecution and the district court will assess the entire filing fee, which is to be made payable to the clerk of the district court. Once dismissed under these procedures, the appeal will not be reinstated despite the payment of the full filing fee or subsequent correction of the deficiency.

## C. All Forms Filed And Good Faith Certification

The statute states that a district court must determine in writing whether a request to appeal in forma pauperis is taken in good faith. 28 U.S.C.A. § 1915(a)(3); *see also Floyd,* 105 F.3d at 277. In cases brought by prisoners, such a certification is not required. Section 1915(a)(3) is modified by the provisions of § 1915(b)(1) (the section begins "[n]otwithstanding subsection (a)"). *See also* 28 U.S.C.A. § 1915(a)(1) ("[s]ubject to subsection (b)"). For a prisoner, the question of whether the appeal is taken in good faith is irrelevant. Under § 1915(b)(1), the prisoner must pay the required filing fees regardless of the merits of the appeal. Therefore, in prisoner cases, district courts are not required to make a good faith certification under § 1915(a)(3).

The statute, however, creates a different procedure for non-prisoners. The statute states that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that the appeal is not taken in good faith." 28 U.S.C. § 1915(a)(3). Courts are required to give plain meaning to the language of the statute. *United States v. Alvarez–Sanchez,* 511 U.S. 350, 356, 114 S.Ct. 1599, 1603, 128 L.Ed.2d 319 (1994). Thus, if the district court concludes that the appeal is not taken in good faith, the individual must pay the entire filing fee and may not proceed

on appeal as a pauper. *Floyd,* 105 F.3d at 277–79.

There is a conflict between the statute and Fed. R.App. P. 24(a). *Id.* at 105 F.3d at 277–78. Rule 24(a) provides in part:

> If a motion for leave to proceed on appeal in forma pauperis is denied by the district court, or if the district court shall certify that the appeal is not taken in good faith or shall find that the party is otherwise not entitled to proceed in forma pauperis, the clerk shall forthwith serve notice of such action. A motion for leave so to proceed may be filed in the court of appeals within 30 days after service of notice of the action of the district court. The motion shall be accompanied by a copy of the affidavit filed in the district court, or by the affidavit prescribed by the first paragraph of this subdivision if no affidavit has been filed in the district court, and by a copy of the statement of reasons given by the district court for its action.

Under § 1915(a)(3), once the district court certifies that an appeal is not taken in good faith, the non-prisoner cannot seek an appeal in forma pauperis. Furthermore, the non-prisoner cannot seek an assessment under § 1915(b)(1) as this section is strictly limited to prisoners. As § 1915(a)(3), which does not permit an appeal to proceed in forma pauperis if the appeal is not taken in good faith, conflicts with Rule 24(a), the statute supersedes the rule and, therefore, the statute controls. *Floyd,* 105 F.3d at 277–78; *Jackson,* 102 F.3d at 136.

## D. Assessment Of Fees On Appeal By District Court

The statute permits any United States court to make the financial assessment for the commencement of an appeal. *See* 28 U.S.C.A. § 1915(a)(1). As the district court is best suited to control the assessment process, the district court should conduct the financial assessment when the prisoner seeks pauper status on appeal.

Because the date the notice of appeal is filed with the district court controls the date of assessment under § 1915(b)(1); expediency requires that the district court issue the order. If the financial assessment order was delayed until the case was transferred and docketed with the court of appeals, several weeks could pass before the court of appeals could order the financial assessment. This lapse of time would allow prisoners to drain their trust accounts to avoid payment of their filing fees.

In issuing the assessment order, the district court may use the same order form which is located in Section III if the prisoner does not have sufficient funds to pay the full fees. However, the current docketing and filing fees for the court of appeals total one hundred and five dollars ($105), rather than the one hundred and fifty dollars ($150) required to file a case in the district court. Under this order and our decision in *Floyd,* motions for pauper status before the court of the appeals no longer exist and will not be entertained by this court. These motions shall now be processed exclusively by the district courts. This order does not, however, impair an individual's ability to request records, transcripts, or counsel before this court under § 1915(c) and § 1915(e)(1).

After the district court advises the court of appeals that the initial partial filing fee under § 1915(b)(1) has been assessed, the appeal may continue. If the district court concludes that the prisoner satisfies § 1915(b)(4), the prisoner may proceed with the appeal without immediate payment of the initial partial filing fee. However, the statute does not relieve the prisoner from paying the required fees when funds become available in the future. Thus, the district court still must impose a fee assessment under § 1915(b)(1), and the prisoner, when he or she receives funds, must still pay the initial partial filing fee, even if the trust account contains less than ten dollars ($10). An appeal may not be dismissed when the payment of an assessment has been delayed by prison officials. A prisoner cannot be penalized when prison officials fail to promptly pay an assessment.

## VII. Multiple Prisoners As Parties

The statute does not specify how fees are to be assessed when multiple prisoners constitute the plaintiffs or appellants. Because

each prisoner chose to join in the prosecution of the case, each prisoner should be proportionally liable for any fees and costs that may be assessed. Thus, any fees and costs that the district court or the court of appeals may impose shall be equally divided among all the prisoners. This procedure also will permit easier accounting for the district courts and prison officials.

In cases involving class actions, the district courts are not to assess fees and costs to each member of the class. As a class action certification is normally made long after the complaint is filed, the responsibility to pay the required fees and costs shall rest with the prisoner or prisoners signing the complaint. In class actions on appeal, the prisoner or prisoners signing the notice of appeal shall be obligated to pay all appellate fees and costs.

## VIII. *Weaver* And *Tingler*

In *Weaver v. Toombs*, 948 F.2d 1004, 1011 (6th Cir.1991), we held that courts have discretion in assessing costs against an unsuccessful prisoner who prosecuted his or her case in forma pauperis. Further, we noted that the courts were required to make a determination of the prisoner's capacity to pay the costs assessed. *Id.* at 1013–14. However, the statute has superseded *Weaver*. When judgment is entered against a prisoner and costs against the prisoner are assessed, § 1915(f)(2)(A) now requires that the prisoner pay the costs either in full, or in accordance with the payment process set forth in § 1915(b)(2). *See* 28 U.S.C.A. § 1915(f)(2)(B). The prisoner's ability to pay the costs is no longer an issue. Section 1915(f)(2)(B) mistakenly refers to § 1915(a)(2) as the authoritative subsection for the payment process. However, § 1915(a)(2) does not contain a payment procedure. The payment process is located in § 1915(b)(2).

The Prison Litigation Reform Act also superseded the procedures set forth in *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir.1983). In *Tingler*, we stated that a district court may not sua sponte dismiss a plaintiff's suit unless the court first gives the plaintiff the opportunity to amend or correct the deficiencies in the complaint. *Id.* at 1111–12. Under § 1915(e)(2), a court is required to dismiss a case when the action satisfies § 1915(e)(2)(A) or § 1915(e)(2)(B). The courts have no discretion in permitting a plaintiff to amend a complaint to avoid a sua sponte dismissal. If a complaint falls within the requirements of § 1915(e)(2) when filed, then the district court must sua sponte dismiss the complaint. Section 1915A also provides for sua sponte dismissals in cases brought by inmates.

## IX. Released Prisoner

As to the issue of released prisoners, the Second Circuit stated in *McGann v. Commissioner, Soc. Sec. Admin.*, 96 F.3d 28, 29–30 (2d Cir.1996):

Our initial question is whether the PLRA requirements, applicable to a person who files an appeal (or a complaint) while a prisoner, continue to apply after the person has been released from confinement. Section 804(a)(3) of the PLRA states that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1) (as amended). Section 804(a)(3) also specifies that the payments are to be made in installments: the initial payment is 20 percent of the greater of the average monthly deposits in the prisoner's account or the average balance in the account for the six months preceding the filing of a complaint or notice of appeal; subsequent payments are 20 percent of the preceding month's income credited to the prisoner's account in each month that the account exceeded $10. *Id.* § 1915(b)(1), (2) (as amended).

These provisions create a facial inconsistency as applied to a released prisoner. On the one hand, the statute broadly states that a prisoner who files an appeal "shall be required" to pay filing fees, and McGann was a prisoner when he filed his appeal. On the other hand, the amounts required to be paid are to be calculated as percentages of the balances of, or deposits into, the prisoner's prison account and are to be debited from that account, and now that McGann is no longer a prisoner, there

is no prison account from which to calculate and debit the required payments. Thus, a literal reading of all provisions of the PLRA, as applied to released prisoners, is not possible.

There are two ways this facial inconsistency could be resolved. The PLRA could be construed to mean that once a prisoner files a complaint or appeal, he becomes liable for the full amount of filing fees, and, if released, must then pay the entire remaining amount of those fees or have his complaint or appeal dismissed. Alternatively, the PLRA could be construed to mean that the required partial fee payments are to be made only while the prisoner remains in prison, and that, upon his release, his obligation to pay fees is to be determined, like any non-prisoner, solely by whether he qualifies for i.f.p. status.

We think that the second construction better conforms to the overall structure of the PLRA. Though Congress specified that a prisoner "shall" pay the full amount of filing fees, the detailed mechanism it created for implementing this obligation by debiting prison accounts demonstrates that Congress expected the new payment requirement to apply to a prisoner who remains incarcerated. Indeed, if the payment obligation continued after release, the released prisoner, lacking a prison account from which partial payments could be debited, would have to pay the entire balance of the fee in a single payment, a result that would be more onerous than that imposed on those who remain incarcerated. It is not likely that Congress intended such a result. A released prisoner may litigate without further prepayment of fees upon satisfying the poverty affidavit requirement applicable to all non-prisoners.

The Second Circuit's analysis provides an efficient resolution to this procedural issue. Therefore, a prisoner is obligated to pay assessed fees and costs only while he or she remains incarcerated. After release, the obligation to pay the remainder of the fees is to be determined solely on the question of whether the released individual qualifies for pauper status. The decision of whether pauper status is available to a released prisoner will be made by the district court.

Although not obligated to do so, prison officials should notify the federal district courts of the release of an inmate who has a financial obligation to the federal courts. This information will assist the courts in the collection of outstanding fees and costs.

## X. District Court Accounts

Congress has not provided a mechanism to close inactive prisoner accounts in the district courts. It is very possible that a prisoner may not have any funds during his or her entire term of incarceration. Thus, the clerk of the district court may have an open account for a prisoner for more than half a century without receiving any funds from prison authorities. Although sympathetic to the concerns of the clerks of the district courts, until Congress creates a statute of limitations on the collections of such debts, the clerks of the district courts will be obligated to keep hundreds of accounts open for decades to come.

This order shall apply to all complaints and notices of appeals filed on or after March 1, 1997.