160 F.3d 567
 98 Cal. Daily Op. Serv. 8298, 98 Daily Journal
D.A.R. 11,516
Max LOPEZ, Jr., Plaintiff-Appellant,
v.
G.A. SMITH, Warden; Larry Loo, Chief Medical Officer; A.
Acevedo, Chief Dental Officer; Patterson, Counselor 4A-2R;
R. Keiner, Dentist; M.P. McClure, 4A-2R Appeals
Coordinator, Defendants-Appellees.
 No. 97-16987.
 United States Court of Appeals,
Ninth Circuit.
 Submitted* Aug. 20, 1998.
Decided Nov. 9, 1998.
 
 Withdrawn by 173 F.3d 749.
 Max Lopez, Jr., Sacramento, California, in Pro per, for plaintiff-appellant.
 Constance L. Picciano, Assistant Supervising Deputy Attorney General, Sacramento, California, for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California; Oliver W. Wanger, District Judge, Presiding. D.C. No. CV-95-05947-OWW/HGB.
 Before: CHOY, SNEED and WIGGINS, Circuit Judges.
 SNEED, Circuit Judge.
 
 
 1
 Max Lopez ("Lopez"), a California state prisoner, appeals pro se the district court's grant of summary judgment and dismissal of his claims under 42 U.S.C. § 1983. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.
 
 I.
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 On October 30, 1995, Lopez filed a Complaint in forma pauperis in the Eastern District of California, alleging that defendants Warden G.A. Smith, Chief Medical Officer Dr. Larry Loo, Chief Dental Officer Acevedo, Dr. Tierney, Counselor Patterson and Appeals Coordinator McClure (collectively "defendants") violated his civil rights protected by 42 U.S.C. § 1983. Lopez alleged that defendants: (1) knowingly placed him in a cell with a dangerous inmate who subsequently injured him; (2) provided inadequate medical care; (3) denied him outdoor exercise; (4) denied him a blanket and pillow in his cell; and (5) improperly placed him in the Security Housing Unit ("SHU").
 
 
 3
 On December 11, 1996, defendants filed a motion to dismiss and for summary judgment and Lopez filed a cross-motion for summary judgment. On May 27, 1997, the Magistrate Judge issued findings and recommendations in which he dismissed Lopez' claims that defendants knowingly housed him in a cell with a dangerous inmate and improperly placed him in the SHU, granted defendants' motion for summary judgment on the remaining claims and denied Lopez' cross motion for summary judgment. On September 18, 1997, the district court adopted the Magistrate Judge's findings and recommendations. Lopez filed a timely notice of appeal on October 6, 1997.
 
 II.
 STANDARD OF REVIEW
 
 4
 This court reviews de novo both the district court's dismissal of an action pursuant to Federal Rule of Civil Procedure 12(b)(6) and grant of summary judgment. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995) (summary judgment); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam) (dismissal).
 
 III.
 DISCUSSION
 
 5
 A. Dismissal of Lopez' Claim of Deliberate Indifference to a Serious Risk to his Safety.
 
 
 6
 Lopez contends that the district court erred in dismissing his claim that prison officials violated the Eighth Amendment by placing him in a cell with a dangerous inmate who subsequently attacked Lopez and broke his jaw. The district court found that Lopez failed to name as defendants the individuals that caused his alleged injury, properly dismissed his claim but did not give Lopez an opportunity to amend the defects in his Complaint. Despite the district court's failure to give Lopez notice and an opportunity to amend, we affirm the dismissal.
 
 
 7
 1. The Prison Litigation Reform Act.
 
 
 8
 The Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104-134, §§ 801-10, 110 Stat. 1321 (1996) codified at 28 U.S.C. § 1915(e)(2) (1996), states in pertinent part that: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that .... the action or appeal ... fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). Courts interpreting this provision have held that the phrase "shall dismiss" is mandatory, rather than permissive. See, e.g., Mitchell v. Farcass, 112 F.3d 1483, 1486 (11th Cir.1997). In other words, the PLRA requires that we dismiss an action or appeal any time a prisoner-litigant proceeding in forma pauperis "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).
 
 
 9
 Congress sought to alter the landscape of prisoner litigation when it enacted the PLRA. Prior to the PLRA amendments, the statute governing a district court's authority to dismiss a pro se prisoner-litigant's complaint stated that a court "may dismiss the case" if it was "satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d) (1994) (emphasis added). The PLRA amended § 1915 which now reads that a court "shall dismiss the case at any time" if a prisoner-litigant "fails to state a claim." 28 U.S.C. § 1915(e)(2)(B)(ii) (1996) (emphasis added); see also Mitchell, 112 F.3d at 1486.
 
 
 10
 When Congress enacted the PLRA amendments it also sought to reduce docket pressure on federal courts caused by a burgeoning prisoner-litigant caseload. In fact, the sponsor of the statute, Senator Dole, stated that, under the new PLRA amendments, cases filed by prisoners proceeding in forma pauperis that failed to state a claim would be "immediately dismissed." 141 Cong. Rec. S14408-01 (1995) (statement of Senator Robert Dole). One way in which the PLRA sought to achieve this goal was by requiring courts to dismiss cases that failed to state a claim upon which relief could be granted. See 28 U.S.C. § 1915(e). With this provision, Congress apparently overrules Ninth Circuit law requiring courts to give a pro se prisoner-litigant an opportunity to amend a defective complaint if that litigant proceeds in forma pauperis. See Armstrong v. Rushing, 352 F.2d 836, 837 (9th Cir.1965).
 
 
 11
 2. Ninth Circuit Law Requiring Notice and Leave to Amend.
 
 
 12
 Ninth Circuit case law predating the PLRA amendments required a district court to provide a pro se litigant with certain procedural protections prior to dismissal of a complaint. See, e.g., Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir.1987). In Noll, 809 F.2d at 1448, this Court set forth five safeguards to protect a pro se litigant from an unfair dismissal of his complaint:
 
 
 13
 (1) process issued and served, (2) notice of any motion thereafter made by defendant or the court to dismiss the complaint and the grounds therefor, (3) an opportunity to at least submit a written memorandum in opposition to such motion, (4) in the event of dismissal, a statement of the grounds therefor, and (5) an opportunity to amend the complaint to overcome the deficiency unless it clearly appears from the complaint that the deficiency cannot be overcome by amendment.
 
 
 14
 In Noll, the district court dismissed a complaint of a pro se prisoner-litigant without providing either a statement of the grounds for dismissal or an opportunity to amend the complaint. Id. at 1447. This court reversed the dismissal and remanded the case to give Noll both an opportunity to amend and an explanation of the deficiencies in his complaint, reasoning that "the pro se litigant is far more prone to making errors in pleading than the person who benefits from counsel" and needs assistance in navigating through the process. Id. at 1448. The Noll rule is a creature of the judiciary and has only been adopted by a few other circuits. See, e.g., Tingler v. Marshall, 716 F.2d 1109 (6th Cir.1983), overruled by In re Prison Litig. Reform Act, 105 F.3d 1131, 1138 (6th Cir.1997) (Order).
 
 
 15
 The Sixth Circuit in In re Prison Litigation Reform Act concluded that the PLRA clearly overruled the "opportunity to amend or correct" rule for pro se prisoner-litigants filing in forma pauperis. The Sixth Circuit reasoned that under the PLRA, courts no longer have "discretion in permitting a plaintiff to amend a complaint to avoid a sua sponte dismissal. If a complaint falls within the requirements of § 1915(e)(2) when filed, then the district court must sua sponte dismiss the complaint." In re Prison Litig. Reform Act, 105 F.3d at 1138.
 
 
 16
 3. Rand v. Rowland Does not Apply.
 
 
 17
 Earlier this year, this Court decided, en banc, Rand v. Rowland, 154 F.3d 952 (9th Cir.1998). In Rand, we reaffirmed the judicially created rule that pro se prisoner-litigants are entitled to fair notice of the requirements of the summary judgment rule. Under this rubric, "district courts [a]re required to give the required notice in all cases" facing summary judgment regardless of the inmate's level of sophistication. Id. at 957 (quoting Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.1988)).
 
 
 18
 The Rand Court noted that the rule was particular to summary judgment proceedings because summary judgment is such a "unique" and "drastic" measure fraught with "a myriad of challenges" that necessarily disadvantages individuals "[u]nschooled in the intricacies of civil procedure." 154 F.3d at 956-57. The Rand Court went on to emphasize that the rule was especially needed to protect prison inmates who surely do not have "an instinctual awareness that the purpose of a motion for summary judgment is to head off a full-scale trial by conducting a trial in miniature." Id. at 957 (quoting Jacobsen v. Filler, 790 F.2d 1362, 1364 n. 4 (9th Cir.1985)).
 
 
 19
 The Rand decision concerned the special circumstances surrounding the summary judgment rule. These procedural intricacies associated with summary judgment do not exist in a 12(b)(6) dismissal for a failure to state a claim. Instead, a 12(b)(6) dismissal rests solely on a litigant's failure to state a claim on which relief can be granted, by either failing to allege the elements of a claim or, as in this case, by failing to name a party that caused the litigant's injury. The same special litigation skills required for summary judgment proceedings are not necessary in 12(b)(6) dismissal proceedings. In light of the fact that a pro se litigant's pleadings are already liberally construed, the absence of additional special protections for pro se prisoner-litigants in these circumstances will not produce the same type of ominous effects predicted by this Court in Rand.
 
 
 20
 4. The Effect on Lopez.
 
 
 21
 In this case, the district court properly dismissed Lopez' claim that prison officials violated his Eighth Amendment rights by placing him in a cell with a dangerous inmate who subsequently attacked Lopez and broke his jaw. The district court correctly held that Lopez failed to name as defendants the individuals who caused his injury.
 
 
 22
 Even though the court did not give Lopez an opportunity to amend the defects in his Complaint, we affirm the district court's dismissal. We hold, pursuant to the PLRA, that a court can no longer, at its discretion, provide an opportunity for the pro se prisoner-litigant proceeding in forma pauperis to amend deficiencies in his complaint.[1] The PLRA provides that a court "shall dismiss" a complaint or appeal for a failure to state a claim and has therefore overruled Ninth Circuit law to the contrary.[2]
 
 
 23
 B. Dismissal of Lopez' Claim that His Confinement to the Security Housing Unit Violated his Eighth and Fourteenth Amendment Rights.
 
 
 24
 The district court properly dismissed Lopez' claims that his second brief confinement in the Security Housing Unit ("SHU") violated his Eighth Amendment and Fourteenth Amendment due process rights. Prison officials did not confine Lopez in the SHU to punish him, rather, they confined Lopez to facilitate his transfer to another institution. Lopez spent 15 days in the SHU, according to the district court, to protect him from assault by another inmate as he awaited transfer to another institution. This brief SHU term, therefore, was not a punishment in violation of the Eighth Amendment. See Hoptowit v. Ray, 682 F.2d 1237, 1246-47 (9th Cir.1982) (violation of the Eighth Amendment requires a sanction that is "so totally without penological justification that it results in the gratuitous infliction of suffering") (citations omitted).
 
 
 25
 Moreover, Lopez' brief confinement in the SHU did not violate his Fourteenth Amendment due process rights. The district court properly dismissed this claim because Lopez, like any inmate, should reasonably anticipate placement in the SHU at some point during his incarceration. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997) (citing Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir.1986)); see also Sandin v. Conner, 515 U.S. 472, 483-85, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The brief time that Lopez spent in the SHU was an ordinary consequence of his confinement-it was required to facilitate his transfer from Corcoran State Prison. Lopez did not, and could not, state either an Eighth or Fourteenth Amendment claim. Thus, the district court properly dismissed his claim.
 
 
 26
 C. Summary Judgment Claims.
 
 
 27
 Lopez contends that the district erred by granting summary judgment on his remaining claims, including allegations that he was: (1) deprived of personal property; (2) not provided adequate medical treatment; (3) confined to a cell without a pillow or blanket; (4) deprived of outdoor exercise for 46 days; and (5) mistreated by medical personnel during transport from Corcoran State Prison. We disagree.[3]
 
 
 28
 First, Lopez contends that prison officials violated his First, Eighth and Fourteenth Amendment rights by depriving him of his personal property (i.e., personal legal materials) for approximately 19 days. The district court properly granted summary judgment on Lopez' First Amendment claim because Lopez failed to demonstrate that the lack of access to his legal materials caused actual injury. See Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.1989). The district court also properly granted summary judgment on Lopez' Eighth Amendment claim because Lopez was not denied "the minimal civilized measure of life's necessities," a required element of an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Finally, the district court properly granted summary judgment on Lopez' Fourteenth Amendment claim because Lopez did not and could not allege that state law remedies were inadequate to redress his harm. See Parratt v. Taylor, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).
 
 
 29
 Second, Lopez contends that prison officials failed to provide him with adequate medical treatment in violation of the Eighth Amendment. In order to prevail on this claim, Lopez was required to present evidence that prison officials demonstrated "deliberate medical indifference." See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989). Because Lopez provided only his own lay opinion regarding appropriate medical treatment and failed to provide any evidence that the medical treatment he actually received was deficient, the district court properly granted summary judgment. See id.
 
 
 30
 Third, Lopez contends that prison officials violated the Eighth Amendment by failing to provide a blanket and pillow in his cell. Lopez failed to produce any evidence that he was denied adequate warmth or heating or that he suffered from the cold; thus the district court properly granted summary judgment. See Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir.1996), amended by 135 F.3d 1318 (9th Cir.1996).
 
 
 31
 Fourth, Lopez contends that prison officials violated the Eighth Amendment by depriving him of outdoor exercise for 46 days. The district court's grant of summary judgment was correct because the temporary denial of outdoor exercise with no adverse medical effects is not a substantial deprivation of rights in violation of the Eighth Amendment. See May, 109 F.3d at 565.
 
 
 32
 Finally, the district court properly granted summary judgment on Lopez' claim that prison officials violated the Eighth Amendment during his transport from Corcoran State Prison. Lopez alleges that doctors refused to remove rubber bands that held his mouth shut because of his broken jaw, even after Lopez indicated that the restraints nauseated him. Because Lopez failed to demonstrate any connection between the named defendants and the alleged constitutional violation, the district court's grant of summary judgment was proper. See Conner v. Sakai, 15 F.3d 1463, 1469 (9th Cir.1994), amended by 61 F.3d 751 (1995).
 
 IV.
 CONCLUSION
 
 33
 For the foregoing reasons, we affirm the district court's dismissal and grant of summary judgment.
 
 
 34
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 [1]
 In Marks v. Solcum, 98 F.3d 494, 496 (9th Cir.1996) (per curiam), we concluded that § 1915(e)(2) applies retroactively. It is therefore of no consequence that Lopez filed his Complaint prior to the enactment of the PLRA
 
 
 [2]
 The scope of this opinion obviously would be limited to suits filed by litigants proceeding in forma pauperis. Section 1915 of the PLRA amendments, designed to curb prisoner litigation, redefined standards for dismissal for inmates that file in forma pauperis. It goes without saying that for individuals who do not file in forma pauperis, "dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Schneider v. California Dep't of Corrections, 151 F.3d 1194, 1196 (9th Cir.1998)
 
 
 [3]
 We note that the record does not show that Lopez received Klingele /Rand summary judgment notice. The Rand Court noted that in circumstances where "the harmlessness of the failure to give the required notice may be established on the record" no remand is required. 154 F.3d at 961. In this case, Lopez filed a 129 page opposition to summary judgment. He argued in that brief that "[b]efore summary judgment is granted, the moving party must show that there is no genuine issue as to any material fact and all pleadings and supporting papers must be viewed in the light most favorable to the party opposing the motion." In addition to his 129 page opposition brief, which the district court considered, Lopez submitted an additional 164 pages of supporting affidavits and evidence. It is clear from the record that Lopez understood the nature of summary judgment, thus any Klingele /Rand error is harmless