United States Court of Appeals,

Eleventh Circuit.

No. 96-3026.

Henry Greene MITCHELL, Plaintiff-Appellant,

v.

Dave FARCASS, Superintendent, Hendry Correctional Institution, J. King, Inspector Hendry Correctional Institution, Defendants-Appellees.

May 6, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 96-201-CIV-FTM-25), Henry Lee Adams, Jr., Judge.

Before HATCHETT, Chief Judge, ANDERSON, Circuit Judge, and LAY[*], Senior Circuit Judge.

HATCHETT, Chief Judge:

In this prisoner civil rights action, we consider challenges to provisions of the Prison Litigation Reform Act of 1995 ("PLRA" or "the Act"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996). We hold that: (1) the provisions of the PLRA codified at 28 U.S.C. § 1915(e)(2) apply to cases pending prior to the Act's passage; (2) the filing fee requirements of the PLRA do not violate the Constitution's guarantee of equal protection; (3) to the extent the PLRA's filing fee requirements conflict with Federal Rule of Appellate Procedure 24(a), the Act's provisions control; (4) Federal Rule of Civil Procedure 12(b)(6) standards govern our review of dismissals under section 1915(e)(2)(B)(ii); and (5) the district court erred in dismissing the appellant's

[*]Honorable Donald P. Lay, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

First Amendment retaliation claim under section 1915(e)(2)(B)(ii).

## I. BACKGROUND

On January 29, 1996, appellant Henry Mitchell, a Florida prisoner proceeding *pro se,* initiated this lawsuit pursuant to 42 U.S.C. § 1983 against Dave Farcass, Superintendent of the Hendry Correctional Institution ("HCI"), and J. King, an inspector at HCI. The district court granted Mitchell's motion to proceed *in forma pauperis* ("IFP"). Mitchell's complaint alleges the following factual scenario.

In late December 1995, Mitchell, then an inmate at HCI, wrote a letter to the Naples, Florida office of the National Association for the Advancement of Colored People in which he complained about the religious services at HCI. Mitchell also sent copies of this letter to several officials of Florida's correctional system, including Farcass. On January 15, 1996, Mitchell submitted an inmate request to Farcass, asking him to explain "why no black culture churches were being allowed to come into [HCI] like the [S]panish culture churches and the white churches." In this request, Mitchell claimed that HCI's religious services did not comply with the provision of the Florida Administrative Code that governs chaplaincy services at state correctional institutions. According to Mitchell, around eighty other inmates had submitted requests "asking the same question or pertaining to that subject."

The following day, January 16, a prison employee told Mitchell to report to "C-Building." Upon his arrival, Mitchell met with Farcass, other HCI officials and another inmate. Farcass had in his possession the inmate requests concerning the chaplaincy

services, including Mitchell's request.  Mitchell guesses that the officials requested his and the other inmate's presence at this meeting because they considered the two inmates "to be the leaders."  Farcass told the inmates that the amount of requests upset him and that "some one could be charged with [in]citing a riot."  Farcass, however, also told Mitchell and the other inmate that the "meeting was to address the issue presented in the requests" and that they "were not being charged with anything, ... were not going to get locked up, [and] were not going to get transfer[r]ed."  Farcass informed the inmates that officials had to process paperwork in order for representatives from black churches to begin visiting HCI.

The next day, January 17, an HCI employee told Mitchell to report to the chaplain, and Mitchell wound up meeting with the chaplain, assistant chaplain and assistant superintendent of HCI. The assistant superintendent stated that the purpose of the meeting was for the chaplain to explain the procedures churches had to comply with before they could be permitted to provide religious services at HCI. During the meeting, someone called the assistant superintendent from the room.  Upon returning, the assistant superintendent reported that Farcass and King had ordered Mitchell placed in administrative confinement while HCI officials investigated whether he was responsible for inciting a riot.

HCI officials placed Mitchell in administrative confinement that same day.  When officials brought Mitchell his property, he found that his legal materials had been "smashed" and "crushed." Later, in the evening, three correctional officers entered

Mitchell's cell, handcuffed him behind his back, and "smashed" his legal work and property. Thereafter, Mitchell submitted another inmate request to Farcass, this time asking that he be placed in "protective management" because he feared further retaliation from the HCI staff.

Mitchell asserts that Farcass and King breached his rights under the First, Fifth, Eighth and Fourteenth Amendments; he seeks monetary relief. On June 18, 1996, the district court addressed Mitchell's complaint. Recognizing Mitchell's IFP status, the court assessed his pleading under the provisions of section 804(a) of the PLRA that are now codified at 28 U.S.C. § 1915(e)(2). The court held, "[a]fter reading Plaintiff's complaint in a liberal fashion," that Mitchell could "prove no set of facts in support of his claim that would entitle him to relief." Therefore, the court dismissed Mitchell's complaint *sua sponte* pursuant to section 1915(e)(2)(B)(ii).[1]

Thereafter, Mitchell moved in the district court to proceed IFP on appeal. On July 31, 1996, the court granted the motion (thus allowing Mitchell to proceed without prepaying the entire $105 appellate docketing and filing fee) and applied the filing fee provisions of PLRA section 804(a), see 28 U.S.C.A. § 1915(a), (b) (West Supp.1997). As a result, the court ordered Mitchell to tender payment of a fee equal to twenty percent of his average monthly deposits to his prison account (this fee totalled $4) and make monthly payments (submitted with updated account statements)

---

[1]Farcass and King were never served with Mitchell's complaint.

equal to twenty percent of the income credited to his account each preceding month, until he paid the full docketing and filing fee. Mitchell filed his notice of appeal on July 3, 1996.

In his *pro se* brief to this court, Mitchell argued, among other things, that the district court erred in applying section 1915(e)(2) to his complaint because he commenced this lawsuit prior to the PLRA's enactment on April 26, 1996, and that the filing fee provisions of the PLRA violated constitutional norms. This court appointed Mitchell a lawyer and placed this case on the oral argument calendar. The United States intervened in this action pursuant to 28 U.S.C. § 2403(a), and the State of Florida participated as *amicus curiae.*

## II. DISCUSSION

### A.

The first issue we address is whether section 1915(e)(2) applies to cases pending prior to the enactment of the PLRA. The district court's determination of this issue was one of law; we review it under the *de novo* standard. *E.g., Goldsmith v. City of Atmore,* 996 F.2d 1155, 1159 (11th Cir.1993).

Prior to the passage of the PLRA, section 1915 permitted a court to dismiss a case authorized under that section if "satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d) (1994). As amended by the PLRA, however, section 1915 now provides that a court "shall dismiss the case at any time" if it determines that the "action or appeal" is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such

relief." 28 U.S.C.A. § 1915(e)(2)(B) (West Supp.1997). As stated, the district court dismissed Mitchell's complaint under section 1915(e)(2)(B)(ii).

"*Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), provides the analytical framework for determining whether newly enacted statutory provisions are applicable to pending cases." *Hunter v. United States,* 101 F.3d 1565, 1569 (11th Cir.1996) (*en banc* ), *petition for cert. filed,* 65 U.S.L.W. 3648 (U.S. Mar. 10, 1997) (No. 96-1443). Under *Landgraf,* our first inquiry is "to determine whether Congress has expressly prescribed the statute's proper reach." 511 U.S. at 280, 114 S.Ct. at 1505. Here, however, Congress has simply not spoken on the issue. Accordingly, we should apply section 1915(e)(2) to pending cases unless doing so would engender a "retroactive effect." *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505; *see also Hunter,* 101 F.3d at 1570. A new statute has a retroactive effect if, in applying it to a pending case, it (1) impairs rights a party possessed when he or she acted, (2) increases a party's liability for past conduct, or (3) imposes new duties with respect to transactions already completed. *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505; *Hunter* 101 F.3d at 1570.

The second and third indices of statutory retroactive effect outlined above clearly have no application to this case, and Mitchell makes no argument to the contrary. The issue for us to consider then, is whether the application of section 1915(e)(2) to this case "would impair rights [Mitchell] possessed when he acted." *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505. Mitchell states that

under pre-PLRA section 1915, the first test of the sufficiency of his complaint would probably have come after the defendants had filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), after which time he could have amended his complaint in light of the defendants' motion. Therefore, Mitchell contends, the application of the PLRA amendments to his case deprived him of the more liberal procedural treatment he had anticipated receiving under the old provisions of section 1915(d).

We have little difficulty in concluding that Mitchell's position fails. As this court stated in *Hunter,* "the term "rights' as used in this context should not be construed broadly so as to sweep within its ambit mere expectation interests under procedural or remedy rules." 101 F.3d at 1572. Mitchell concedes, as he must, that the PLRA amendments at issue are "wholly procedural"; moreover, we cannot say that Mitchell has anything more than an expectation interest in having pre-PLRA section 1915 applied in his case. Indeed, we find the appellants' position in *Hunter* (*i.e.,* that applying the certificate of appealability provisions of the Antiterrorism and Effective Death Penalty Act of 1996 to pending cases would produce a retroactive effect), which this court sitting *en banc* unanimously rejected, much more compelling than Mitchell's argument. *See Hunter,* 101 F.3d at 1568-73. Consequently, we agree with the Ninth Circuit that section 1915(e)(2) "raises no retroactivity concerns under *Landgraf*." *Marks v. Solcum,* 98 F.3d 494, 496 (9th Cir.1996).

## B.

We next consider whether the filing fee provisions of the

PLRA (1) withstand equal protection review and (2) are superseded by Federal Rule of Appellate Procedure 24(a). These issues present legal questions that we address in plenary fashion. *E.g., Collins v. American Cast Iron Pipe Co.,* 105 F.3d 1368, 1370 (11th Cir.1997).

Section 804(a) of the PLRA refashioned the procedures prisoners must observe when seeking to proceed IFP in civil actions. Title 28 U.S.C. § 1915(a)(2) now provides:

> A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C.A. § 1915(a)(2) (West Supp.1997). Section 1915(b) now reads:

> (b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—
>
> > (A) the average monthly deposits to the prisoner's account;  or
> >
> > (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.
>
> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.
>
> (3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a

civil action or an appeal of a civil action or criminal judgment.

(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

28 U.S.C.A. § 1915(b) (West Supp.1997).

Mitchell contends that the PLRA's filing fee requirements fail equal protection rational basis review and thus deny him due process under the Fifth Amendment.[2] "The first step in determining whether legislation survives rational-basis scrutiny is identifying a legitimate government purpose—a goal—which the enacting government body *could* have been pursuing." *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir.1995). "The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose." *Haves,* 52 F.3d at 922.

After reviewing the statutory framework of the PLRA, this court recently concluded that Congress promulgated the Act to

---

[2]In his brief to this court, Mitchell's counsel made clear that

> Mr. Mitchell does not contend that the amended statute's different treatment of indigent prisoners implicates the line of Supreme Court cases beginning with *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), which generally prohibits making access to the appellate process dependent on the appellant's ability to pay.... Mr. Mitchell also does not contend that prisoners (or specifically indigent prisoners) are a suspect class for purposes of his equal-protection claim.

Appellant's Br. at 17-18. We note that both the Fourth and Sixth Circuits have considered and rejected each of these contentions in denying challenges to the PLRA. *See Roller v. Gunn,* 107 F.3d 227, 231-33 (4th Cir.1997); *Hampton v. Hobbs,* 106 F.3d 1281, 1284-87 (6th Cir.1997).

curtail abusive prisoner tort, civil rights and conditions litigation. *Anderson v. Singletary,* No. 96-2697, --- F.3d ----, ---- (11th Cir.1997); *see also Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997) ("The legislation was aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts."); *Santana v. United States,* 98 F.3d 752, 755 (3d Cir.1996) ("Congress enacted the PLRA primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act, most of which concern prison conditions and many of which are routinely dismissed as legally frivolous."). Clearly, Congress had a rational basis to believe that the fee requirements of the PLRA would further this objective. As the Sixth Circuit recently found:

> Congress sought to put in place economic incentives that would prompt prisoners to "stop and think" before filing a complaint. Congress's rationale for placing the fee requirements on prisoners is captured in the statements of Senator Kyl:
>
> > Section 2 will require prisoners to pay a very small share of the large burden they place on the Federal judicial system by paying a small filing fee upon commencement of lawsuits. In doing so, the provision will deter frivolous inmate lawsuits. The modest monetary outlay will force prisoners to think twice about the case and not just file reflexively. Prisoners will have to make the same decision that law-abiding Americans must make: Is the lawsuit worth the price? Criminals should not be given a special privilege that other Americans do not have....
> >
> > The volume of prisoner litigation represents a large burden on the judicial system, which is already overburdened by increases in nonprisoner litigation. Yet prisoners have very little incentive not to file nonmeritorious lawsuits. Unlike other prospective litigants who seek poor person status, prisoners have all the necessities of life supplied, including the materials required to bring their lawsuits. For a prisoner who

> qualifies for poor person status, there is no cost to bring a suit and, therefore, no incentive to limit suits to cases that have some chance of success.
>
> The filing fee is small enough not to deter a prisoner with a meritorious claim, yet large enough to deter frivolous claims and multiple filings.

> 141 Cong. Rec. S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl) (citations omitted).

*Hampton,* 106 F.3d at 1286-87. In addition to the foregoing, we note that prisoners "often have free time on their hands that other litigants do not possess." *Roller v. Gunn,* 107 F.3d 227, 234 (4th Cir.1997). Moreover, prisoners have unique incentives to file meritless or frivolous lawsuits, *e.g.,* to attempt to obtain a "short sabbatical in the nearest federal courthouse," *Cruz v. Beto,* 405 U.S. 319, 327, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (1972) (Rehnquist, J., dissenting), or to harass prison officials or correctional officers. *See, e.g., Nasim v. Warden, Md. House of Correction,* 64 F.3d 951, 953-54 n. 1 (4th Cir.1995) (*en banc* ) (noting that "all too often" prisoner litigation is initiated to harass prison officials), *cert. denied,* --- U.S. ----, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996). In short, "[d]eterring frivolous prisoner filings in the federal courts falls within the realm of Congress's legitimate interests, and the specific provisions in question are rationally related to the achievement of that interest." *Hampton,* 106 F.3d at 1287; *accord Roller,* 107 F.3d at 230-31, 233-34.

Mitchell bases his equal protection challenge on *Rinaldi v. Yeager,* 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). In that case, the Court struck down a New Jersey statute that required unsuccessful criminal appellants who were incarcerated, but not

unsuccessful criminal appellants who were not imprisoned, to reimburse the state for the costs of trial transcripts. 384 U.S. at 308, 86 S.Ct. at 1499. In so doing, the Court found that the classification at issue did not further any of the purported bases for the law—reimbursement, administrative convenience or deterrence of frivolous appeals. 384 U.S. at 309-11, 86 S.Ct. at 1499-1501 . Mitchell argues that the "distinction made in 28 U.S.C. § 1915(b) between incarcerated indigent [litigants] and all other indigent [litigants] is nearly identical to the distinction made in *Rinaldi.*"

We find *Rinaldi* inapposite. Unlike the situation here, that case involved an "unreasoned distinction," *i.e.,* the Court could not find *any* justification for the classification the New Jersey statute made. *See Rinaldi,* 384 U.S. at 309-10, 86 S.Ct. at 1499-1500. In enacting the PLRA, however, Congress had ample justification (*e.g.,* prisoners often have an abundance of free time, live in a nearly cost-free environment, and have unique incentives to file meritless or frivolous lawsuits) in differentiating between indigent prisoners and other litigants. *See Roller,* 107 F.3d at 234 n. 2.

Next, Mitchell contends that the fee provisions of the PLRA stand in apparent conflict with Federal Rule of Appellate Procedure 24(a), which states that once a district court grants a party's motion to proceed IFP, "the party may proceed without further application to the court of appeals and without prepayment of fees or costs in either court or the giving of security therefor." Fed.

R.App. P. 24(a).[3] The Fifth Circuit recently considered this issue and cited authority for the proposition that "a statute passed after the effective date of a federal rule repeals the rule to the extent that it actually conflicts." *Jackson v. Stinnett,* 102 F.3d 132, 135 (5th Cir.1996). The court went on to hold that "[t]o the extent that the Rules Enabling Act (as expressed in Rule 24(a)) actually conflicts with the PLRA, we hold that the statute repeals the Rule." *Jackson,* 102 F.3d at 136. We adopt the analysis and holding of the *Jackson* court. *See* 102 F.3d at 134-36; *see also Floyd v. United States Postal Serv.,* 105 F.3d 274, 278 (6th Cir.1997) ("[T]o the extent that Rule 24(a) conflicts with the PLRA, we hold that the statute repeals Rule 24(a).").

C.

Finally, we address the propriety of the district court's dismissal of this action, *i.e.,* whether the district court correctly concluded that Mitchell failed to state a claim on which relief may be granted. The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6), and we will apply Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii). Of course, we review dismissals under Rule 12(b)(6) *de novo,* viewing the allegations in the complaint as true. *E.g., South Fla. Water Management Dist. v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996).

"To state a first amendment claim for retaliation, a prisoner

---

[3]Although Mitchell discussed this issue in his brief, he did not formally assert it. He did, however, pursue the issue at oral argument, and therefore we address it. *See Beckwith v. City of Daytona Beach Shores,* 58 F.3d 1554, 1561 n. 11 (11th Cir.1995).

need not allege violation of a separate and distinct constitutional right.... The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Thomas v. Evans,* 880 F.2d 1235, 1242 (11th Cir.1989). In *Bridges v. Russell,* 757 F.2d 1155, 1157 (11th Cir.1985), we reversed the dismissal of a complaint where the prisoner-appellant alleged that officials transferred him to another facility because he (1) filed a grievance against his work supervisor alleging racial discrimination in the assignment of work duties; (2) actively encouraged other inmates to sign a petition in protest of this treatment; and (3) prepared a similar grievance on behalf of another inmate. In our view, it does not appear beyond doubt that Mitchell can prove no set of facts that would entitle him to relief on his First Amendment claim for retaliation. *See Bridges,* 757 F.2d at 1157; *see also Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir.1989); *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986). Accordingly, we reverse the district court and remand for further proceedings on this issue.

## III. CONCLUSION

For the foregoing reasons, we hold that: (1) the PLRA's filing fee provisions easily pass equal protection rational basis review; (2) to the extent those provisions conflict with Federal Rule of Appellate Procedure 24(a), the PLRA controls; (3) the district court was correct in concluding that 28 U.S.C. § 1915(e)(2) applied in this case; (4) Federal Rule of Civil Procedure 12(b)(6) standards govern our review of dismissals under section 1915(e)(2)(B)(ii); and (5) the district court erred in

dismissing Mitchell's First Amendment retaliation claim pursuant to section 1915(e)(2)(B)(ii).  As a result, we remand to the district court for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

LAY, Senior Circuit Judge, concurring:

I am pleased to concur in Chief Judge Hatchett's excellent opinion holding (1) that the filing fee provisions of the PLRA do not violate a prisoner's equal protection rights, and (2) that the procedural mechanism for dismissal of *in forma pauperis* (IFP) suits found in § 1915(e)(2) may be applied retroactively.  I write separately, however, to note my concern as to the constitutionality of § 1915(e)(2)(B)(ii), which allows *sua sponte* dismissal of an IFP complaint that fails to state a claim upon which relief may be granted.

This case comes to us in an unusual posture.  On June 18, 1996, the district court, without service of process, summarily dismissed Mitchell's *pro se* complaint as failing to state a claim for relief, applying the dismissal standard of Fed.R.Civ.P. 12(b)(6).  On July 31, 1996, the district court granted Mitchell leave to appeal IFP, assessing him filing fees pursuant to the new provisions of § 1915(b).  The only issues decided by the district court related to whether Mitchell had filed a complaint sufficient to withstand dismissal under the new act.  On January 28, 1997, this court ordered an expedited appeal and appointed counsel.  Although issues regarding the PLRA were not raised or briefed in the district court, this court requested that counsel address the constitutionality of § 1915(b), and the retroactive effect, if any,

of § 1915(e)(2). I am informed that one of the reasons this court took this action is that several hundred cases in the district courts of the Eleventh Circuit are awaiting a decision on the constitutionality and retroactivity of the PLRA. In addition, it should be obvious that the court took this liberty because this petitioner appeared *pro se* in the district court, and because of the importance of these issues to all IFP litigants.

Litigants and district courts, however, should not be confused by the path of this litigation. Additional constitutional challenges to the PLRA, including the one I articulate today, are not foreclosed by this court's opinion. I write this concurring opinion to note my concern with the substance of § 1915(e)(2)(B)(ii), used in this case, which I feel is constitutionally flawed. Since this court raised the constitutional issues on its own, it seems to me our opinion should be expanded to consider this additional constitutional concern.

It is my view that in this section, Congress has deprived prisoners and other indigents[1] of a significant procedural right

---

[1]Section 1915(e) applies to all IFP litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories. Therefore, in my discussion of § 1915(e), I will usually use the term "IFP litigants" to encompass all of these individuals. I note, however, that the group most affected by § 1915(e) will be prisoners, simply because they make up such a large fraction of IFP litigants. In addition, the 1996 statute's purpose is to curtail prisoner litigation, a point exemplified not only by its title, but also by the ambiguous language in § 1915(a), which purports to apply to any "person," but only if that person "submits an affidavit that includes a statement of all assets such *prisoner* possesses." (emphasis added). This section obviously needs clarification. *See Floyd v. United States Postal Serv.*, 105 F.3d 274, 275 (6th Cir.1997) ("Despite the use of the term "prisoner possesses,' we conclude that a typographical error in the final version of the statute occurred and that Congress actually intended the phrase

that noninstitutionalized paying litigants enjoy, and has not provided a rational justification for this differential treatment.

Under the earlier version of the IFP statute, the district court was empowered and instructed to dismiss an IFP application *sua sponte* if it deemed the suit was frivolous or malicious. 28 U.S.C. § 1915(d) (1994). This rule was in accord with the established principle that a patently frivolous complaint may be dismissed for want of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). *Neitzke v. Williams,* 490 U.S. 319, 327 n. 6, 109 S.Ct. 1827, 1832 n. 6, 104 L.Ed.2d 338 (1989) (citing *Hagans v. Lavine,* 415 U.S. 528, 536-37, 94 S.Ct. 1372, 1378-79, 39 L.Ed.2d 577 (1974); *Bell v. Hood,* 327 U.S. 678, 682-83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). The obvious rational basis for such peremptory action was that the government should not incur expenses in serving parties sued in frivolous actions. Thus, named defendants were typically not required to respond to these suits. *See Neitzke,* 490 U.S. at 324, 109 S.Ct. at 1831 ("Dismissals on these grounds are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints."). Section 1915(d)'s successor, 28 U.S.C. § 1915(e), applied here to Mitchell's complaint, allows courts to dismiss a complaint *sua sponte* not only for frivolousness, but also for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). [2] While

---

to be "person possesses.' ").

[2] Section 1915(e)(2) reads as follows:

Notwithstanding any filing fee, or any portion thereof, that

courts have recognized that this seemingly innocuous change is a significant expansion of the court's power, *see, e.g., Douglas v. DeBruyn,* 936 F.Supp. 572, 579 n. 4 (S.D.Ind.1996), nothing in the legislative history of the statute indicates that Congress was aware of the real meaning of the change. *See* 141 Cong Rec. S14413-S14419 (daily ed. Sept. 27, 1995); 141 Cong. Rec. S7525-S7527 (daily ed. May 25, 1995).

The difference between dismissal for frivolousness and dismissal for failure to state a claim was explained by the Supreme Court in *Neitzke,* which interpreted § 1915(d) of the old IFP statute. The *Neitzke* Court, as a matter of statutory interpretation, was critical of the district court in conflating the standards of frivolousness under the old § 1915(d) and failure to state a claim upon which relief could be granted. The Supreme Court observed that the error in doing so denied "indigent plaintiffs the practical protections against unwarranted dismissal generally accorded paying plaintiffs under the Federal Rules." 490

---

may have been paid, the court shall dismiss the case at any time if the court determines that—

> (A) the allegation of poverty is untrue; or

> (B) the action or appeal—

>> (i) is frivolous or malicious;

>> (ii) fails to state a claim on which relief may be granted; or

>> (iii) seeks monetary relief against a defendant who is immune from such relief.

Its predecessor read, "The court may ... dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d) (1994).

U.S. at 330, 109 S.Ct. at 1834.

*Neitzke* recognized that protection from *sua sponte* dismissal for failure to state a claim is a meaningful right:

> Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon. These procedures alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.

*Id.* at 329-30, 109 S.Ct. at 1833-34. The PLRA strips this right only from IFP litigants, denying them equality of treatment in the federal courts. *See id.* at 330, 109 S.Ct. at 1834 (noting the unfairness in applying the failure to state a claim dismissal standard to § 1915(d), because an indigent litigant's complaint "whose only defect was its failure to state a claim, will in all likelihood be dismissed *sua sponte,* whereas an identical complaint filed by a paying plaintiff will in all likelihood receive the considerable benefits of the adversary proceedings contemplated by the Federal Rules"). This differential treatment cannot in my view be justified by the stated purposes of the PLRA—to deter frivolous prisoner litigation and ease the burden of such suits on the federal courts. The distinction between immediate dismissal for failure to state a claim and immediate dismissal for frivolousness, if not lost on the average litigant, surely will not weigh heavily in his or her decision whether to bring a claim. Easing the small bit of the courts' burden that is made up of complaints that are not frivolous but nonetheless fail to state a claim simply cannot be justified when weighed against the procedural right IFP

litigants are denied. Depriving one group of this right while retaining it for another stands in stark opposition to established principles of equal access to courts for all litigants, which of course is the original purpose behind 28 U.S.C. § 1915. *See Coppedge v. United States,* 369 U.S. 438, 447, 82 S.Ct. 917, 922, 8 L.Ed.2d 21 (1962) (noting that the purpose of the IFP statute was "to assure equality of consideration for all litigants"); *cf. Rinaldi v. Yeager,* 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966) (ruling that judicial mechanisms like appellate review "must be kept free of unreasoned distinctions that can only impede open and equal access to the courts").[3]

In stating my objections, I recognize that there is no question that many prisoner suits are baseless. I also agree that the payment of a filing fee may well deter such suits. We should proceed with caution, however, in approving additional deterrence mechanisms that trample prisoner litigants' rights, for fear we lose sight of the purpose of prisoner litigation: to protect prisoners' constitutional rights, and to curb inhumane treatment and abuse of power in prison environments. *See generally, e.g., Hudson v. McMillian,* 503 U.S. 1, 4, 112 S.Ct. 995, 997-998, 117

---

[3]The same problems arise under the newly given right of the court to dismiss claims on the ground of immunity. Under Fed.R.Civ.P. 12(c), the defense of immunity is an affirmative defense, which should be asserted in an adversarial setting. Some courts have required plaintiffs responding to assert specific facts addressing the defense of qualified immunity in a special reply under Rule 7, governing notice pleading. *See, e.g., Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir.1995) (en banc). Often, factual issues need to be resolved to determine whether immunity is justified. Resolution of these issues can only occur in an adversarial setting. Obviously, if the case is patently frivolous on immunity grounds, the court can still dismiss it before service, under § 1915(e)(2)(B)(i).

L.Ed.2d 156 (1992) (determining that prison guards who placed an inmate in handcuffs and shackle and beat him while their supervisor told them "not to have too much fun" used excessive force in violation of the Eighth Amendment); *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (affirming a punitive damage award against a prison guard whom a jury found liable for the harassment, beating, and homosexual rape of a Missouri reformatory inmate); *Hutto v. Finney* 437 U.S. 678, 681-83, 98 S.Ct. 2565, 2568-70, 57 L.Ed.2d 522 (1978) (deeming the district court's characterization of Arkansas prison conditions as "a dark and evil world completely alien to the free world" to be "amply supported by the evidence"). While many prisoner lawsuits are a burden to the state and to the judicial system, limited overview by the courts serves as a deterrent to prison authorities who might otherwise abuse their power, and serves also as a necessary inducement to them to provide humane conditions to prisoners.[4]

---

[4]Chief Judge Jon Newman of the Second Circuit has challenged courts with prisoner litigation suits before them to "avoid letting the large number of frivolous complaints and appeals impair their conscientious consideration of the few meritorious cases that are filed." Hon. Jon O. Newman, *Pro Se Prisoner Litigation: Looking for Needles in Haystacks,* 62 Brook. L.Rev. 519, 527 (1996). The adversarial process inherent in the standard for dismissal for failure to state a claim is a useful tool in meeting this challenge. *See Neitzke,* 490 U.S. at 330, 109 S.Ct. at 1834. Congress has not provided a rational justification for denying the courts this tool and differentiating between indigent and nonindigent litigants.